**SAMUEL STAMPING & ENAMELING CO. v. MONROE FURNITURE CO., LIMITED.***

No. 5273.

Court of Appeal of Louisiana. Second Circuit.

Dec. 11, 1936.

*Rehearing denied 172 So. 217.

**464** ■　　　■

Hudson, Potts, Bernstein & Snelling, of Monroe, for appellant.

S. E. Burgoyne, of Monroe, for appellee.

TALIAFERRO, Judge.

This suit, on open account, was instituted by plaintiff to recover the sale price, less credits as will hereinafter be discussed, of a large number of gas heaters and accessories sold and delivered to the defendant in the autumn of 1934. Of the heaters sold, according to trade-name, there were 121 Claybacks, 14 Radiant, and 250 for bathroom use. The aggregate of the account originally was $1,005.62.

Defendant admits the purchase of and delivery to it of the goods described in the account sued on; and avers that same were purchased for resale by wholesale and retail, of which plaintiff was aware; but it avers that all of said merchandise was defective and unfit for the use and purpose for which it was intended by the manufacturer and purchased by defendant, of which defects plaintiff, the alleged manufacturer, had knowledge when the sales to defendant were consummated; that all of said merchandise was sold to its affiliates in business and to its wholesale, retail, and indvidual customers and that all of which, because of inherent defects and vices, was returned to defendant and by it in due course returned to plaintiff; that its patrons immediately after acquiring heaters began to complain to it of their failure to function properly, particularly that the Claybacks would crack as soon as exposed to heat and fall apart, although designed to withstand the gas heat intensity to which they were subjected. For these reasons, defendant disclaims any liability whatever to plaintiff for the price of said merchandise.

In reconvention, defendant sues plaintiff for $3,418.62 alleged to be due it for the following reasons:

1. $318.62 of said amount composed of the following:

(a) Freight paid on 6,977 pounds of merchandise at 74 cents per cwt ................. $ 51.62

(b) Expenses of drayage, connecting and reconnecting new and replacement heaters involving 89 of the defective heaters herein involved .... 267.00

2. $600.00 for loss of anticipated reasonable profits on resale of said merchandise.

3. $2,500.00 for damages suffered from loss of patronage, injury to its good will and credit standing, arising from and following the dissatisfaction of its many customers on account of the failure of said heaters to function properly, etc.

There was judgment in favor of plaintiff for $342.50, the price of the bathroom heaters with legal interest from November 15, 1935, and judgment for defendant for $318.62 with legal interest from November 27, 1935. Defendant only has appealed, answering which plaintiff prays that the reconventional demand be rejected in full; and, in the alternative, that the judgment in its favor be increased by the price of the 14 Radiant heaters, being the sum of $41.30, which the lower court disallowed.

While defendant's answer charges that all the heaters were defective to the extent that they were useless, in the course of trial it developed that the bathroom heaters were entirely satisfactory and defendant admitted liability therefor. The record further discloses that no fault was found with the 14 Radiant heaters, and these will be eliminated from further discussion. Only the Clayback heaters gave trouble and thereon hangs this controversy.

■■ Defendant sold nearly all of the Clayback heaters to its affiliates and customers in East Texas, North Louisiana, and in Jackson and Vicksburg, Miss. Very soon after the first sales were made, numerous complaints reached its office in Monroe to the effect that the Claybacks were cracking and disintegrating on application of heat. In some cases new heaters were given the customer, but with no better result. Some customers demanded a return of the money paid for the heaters, while others accepted a different type of heater in lieu of those with Claybacks. No doubt these well-founded complaints and justified dissatisfaction of customers caused much inconvenience and no little embarrassment to defendant's officers. Notice thereof was given plaintiff and, after some correspondence, Mr. L. O. Morin, Sr., was sent by plaintiff to adjust the controversy with defendant. After some discussion with

Mr. Joe Isaacman, vice president, and evidently conceding the justness of defendant's position in whole or in part, Morin proposed to take back for his firm' all of the heaters which would be delivered to him or the firm and give credit for the price thereof; plus freight to Monroe, La. This offer was accepted by defendant. At that time 32 heaters were delivered to Morin from defendant's warehouse and a credit of $166.91, including freight, was allowed. He then returned to Shreveport and there picked up 13 additional heaters in the hands of an affiliate. Credit was also given for these which, including freight, amounted to $65.28. Thereafter, three shipments by rail were made to plaintiff. These embraced 25 heaters. Credit was given therefor, plus freight, but less breakage due to insecure packing. The total credit for the three shipments amounted to $112.91, and this credit, plus the two for the heaters delivered to Morin, makes a total of $345.10, which is admitted in the petition. Seventy heaters in all were delivered. Mr. Isaacman testified that all the Clayback heaters were returned to plaintiff, but finally admitted that a few of them were in his company's warehouse when the case was tried. However, he does not furnish any information as to the time when or means by which the goods were returned. No bills of lading or other written evidence of shipment were introduced in evidence or referred to. No mention is made of any letter advising of shipments. Plaintiff's officers positively declare that credit has been given defendant for all goods returned to it. Their attitude toward the matter convinces us that if other heaters had been received by them, due credit would have been given therefor. Defendant filed in evidence a detailed statement disclosing the number of heaters retailed by it and the names of the companies to whom same were sold by wholesale, aggregating 89, together with itemized charges in each instance covering expense of connecting, disconnecting, and reconnecting, and drayage, on which there is also listed, "heaters still out to be returned to factory," 38 all told, and the names of the various purchasers thereof. No charge whatever is made against plaintiff in this suit for connecting, disconnecting, or reconnecting these 38 heaters, nor for drayage, as was invariably done with regard to the other 89. We conclude that the testimony in the case does not preponderately support defendant's contention that all of the Clayback heaters were returned by it to plaintiff. The number not returned is 57, the cost price of which was $272. Defendant is properly charged with and sued for this amount.

■ The sale of the Clayback heaters was in effect rescinded between the parties to the extent of the number that would be delivered back to plaintiff. Defendant accepted plaintiff's agent's proposition to return the used and unused heaters and receive credit on the account therefor, and would have been entitled to full credit for their sale price if all had been returned. Until and unless returned, where such is possible, no credit may be demanded for the full price of the defective articles. This is the rule in redhibitory cases and finds place here. Henderson v. Leona Rice Milling Company, 160 La. 597, 598, 107 So. 459; George v. Shreveport Cotton Oil Company, 114 La. 498, 38 So. 432.

■ Defendant has established expense incurred by it in connecting, disconnecting, and reconnecting, in whole or part, 89 of the heaters, and drayage necessary in connection therewith. This expense is shown to be $267 and is recoverable as an element of damages, under article 2531 of the Civil Code, which reads as follows:

*"Good faith seller—Right and liabilities.* —The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses."

It was necessary in a large measure to incur this expense in order to meet plaintiff's terms for the rescission of the sale and "for the preservation of the thing," so that it could be returned to the seller. See Kodel Radio Corporation v. Shuler, 171 La. 469, 470, 131 So. 462, 463; Fuentes v. Caballero, 1 La.Ann. 27.

■ Plaintiff complains that this charge is excessive, it being $3 for each heater returned. We are impressed with this contention, but do not find in the record any positive evidence to controvert the correctness of the charge. The record does not disclose the number, if any, of unused heaters returned to plaintiff.

Plaintiff objected to the admissibility of all evidence tendered in support of the other two items of damage sued for. It was admitted subject to the objection, but was evidently rejected by the trial judge when finally passing on the case, as these items were denied in full by him. We agree with this disposition of the matter. In regard to this evidence, plaintiff's position is that as it acted in good faith in selling the heaters and had no knowledge of the vices of the Claybacks, which were not manufactured by it, under articles 2531 (quoted above) and 2545 of the Civil Code, damages of the character involved in these two claims may not be recovered. Article 2545 is as follows:

"*Restitution and damages—Liability for.* —The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."

Pretermitting a discussion of the effect upon defendant's right to recover such damages, since it became a party to the rescission of the sale of the heaters without reservation, we take up for consideration the merits of the two items. Plaintiff's good faith as seller has not been successfully refuted. It is presumed. These heaters were sold to defendant at a reduced price because the patterns therefor were being discontinued. Such goods are referred to by the commercial world as "close-outs." This term, however, does not imply imperfect or faulty material or workmanship; nor does it imply that the standard quality of the merchandise is not guaranteed by the vendor. In the present case, the seller impliedly, if not expressly, warranted the quality of the heaters to be such as to give satisfactory service for the purpose for which they were manufactured and for which they were purchased. However, the measure of liability for failure of such warranty, the seller being in good faith, is fixed by the Civil Code and the jurisprudence of the state and excludes damages such as we are now considering.

Defendant contends that as the heaters were manufactured by plaintiff, their defective character presumptively was known to it, and cites George v. Shreveport Cotton Oil Company, supra; Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906, 40 L.R.A.(N.S.) 480, Ann.Cas.1913B, 1110, Kodel Radio Corporation v. Shuler,

supra, in support of its position. The first two of these cases do announce the doctrine urged by defendant, but the last one does not so hold. In that case the defective character of radios sold by plaintiff, the manufacturer, was established. The purchaser, defendant, reconvened and claimed damages for loss of profits and expenses incurred for freight, drayage, advertising, etc. In disposing of the reconventional demand, the court said:

"The judge was right in his ruling that the defendant's reconventional demand for damages was not well founded, because, as far as the record discloses, the plaintiff believed, in good faith, that the radios were so constructed that they would function in the climate in which they were to be sold and used. When the seller is in good faith, not knowing of any defect in the thing sold, he is responsible only for the return of the price and the payment of the expenses occasioned by the sale or incurred for the preservation of the thing sold, if in fact it is defective or unfit for the purpose for which it was intended. Rev.Civ.Code, art. 2531. It is only in cases where the seller knew of the defect in the thing sold and failed to declare it that he is answerable in damages, as well as for the return of the price and payment of the expenses, if the thing sold is in fact defective. Rev.Civ. Code, art. 2545."

This being the last expression of the Supreme Court on such issue, we deem it binding on us.

In this connection, we might add that plaintiff contends that as the Claybacks were not manufactured by it, but purchased by it from the manufacturer, and incorporated in the heaters which it did manufacture, the rule announced in the two earlier decisions, supra, does not apply here. In view of the court's holding in the Kodel Radio Case, we do not pass upon the issue tendered by this position.

The lower court allowed defendant $51.62 for freight on the Clayback heaters to Monroe, but as we have found that 57 of the heaters were not returned, no freight allowance should be made for them. The credits given for heaters delivered to Morin and shipped direct to plaintiff, as discussed supra, include freight thereon to Monroe. Therefore, the entire $51.62, as a unit, will be eliminated.

For the reasons herein assigned, the judgment in favor of plaintiff appealed

from is amended by increasing the amount thereof to $655.80, and that in favor of defendant on its reconventional demand is reduced to $267; and as thus amended said judgment is affirmed; one-half of the costs of the lower court is assessed against each litigant; costs in this court are assessed against defendant.