57 So.2d 666 (1952)
220 La. 733
TUMINELLO et ux.
v.
MAWBY et al.
No. 40040.
Supreme Court of Louisiana.
February 18, 1952.
Samuel P. Love and Kenneth Rigby, Shreveport, for defendants-appellants.
Booth, Lockard & Jack, Shreveport, for plaintiffs-appellees.
HAWTHORNE, Justice.
Plaintiffs, John G. Tuminello and Josephine B. Tuminello, are seeking from defendants, W. W. Mawby and Larry C. Armstrong, a diminution of the purchase price of certain property and damages because of certain alleged redhibitory vices existing in the property at the time of its purchase. Plaintiffs were awarded an in solido judgment against the defendants for the sum of $3,424. From this judgment defendants appealed.
Defendants Armstrong and Mawby had an agreement whereby Armstrong would purchase lots of ground situated in the City of Shreveport, and Mawby would build or construct on each lot a dwelling for which he would receive 10 per cent of the costs. The lot and the dwelling thus constructed thereon would be sold, and the profits, if any, would be divided between them.
Under this agreement a brick veneer dwelling, constructed by the contractor, Mawby, was conveyed to plaintiffs on September 6, 1946, for a total consideration of $20,000. Approximately eight months after plaintiffs had occupied the dwelling as a home, hairline cracks developed in the plastered walls in the northeast portion *667 of the structure. These cracks became larger, and eventually the brick walls themselves parted, or what is called fissures appeared of such size that a man's hand could be inserted therein, rain and wind came through them, and daylight could be seen. The plaster fell from the wall, and the interior began to deteriorate and became unsightly in appearance.
Plaintiffs allege that the cause of these fissures was an inadequate foundation which broke, and that they would not have purchased the house if they had known of the latent defects in such foundation, and that such defects caused the house to be entirely unsuitable for a dwelling. Accordingly they pray for the diminution of the price in the sum of $4,000, the amount alleged to be necessary to make the needed repairs, and for damages in the sum of $1,000, or a total of $5,000.
Defendants deny that the defects alleged existed at the time of the sale, and allege that plaintiffs or their agents caused the condition complained of in landscaping the property, and they also plead the prescription of one year to the redhibitory action, as provided in Article 2534 and Article 2546 of the Civil Code.
As found by the trial judge, the evidence establishes beyond any question that the fissures in the walls were caused by a foundation inadequate and improperly designed and constructed for the nature of the soil; that the foundation constructed was not properly designed to support the weight of the dwelling which rested thereon, and that as a result the foundation broke in two different places and permitted the brick dwelling to settle. The latent defects in this foundation, which had been built by the defendant Mawby, existed before, and at the time of, the sale to the plaintiffs, and, further, the evidence does not support defendants' contention that the plaintiffs or their agents brought about the defect in these walls by their efforts in landscaping the property.
We now come to the plea of prescription of one year urged by the defendants under Articles 2534 and 2546 of the Civil Code. In considering this plea we must keep in mind that the brick dwelling was constructed and built by the defendant Mawby, a contractor, who was engaged in that business, and that as a partner with the defendant Armstrong he actually conducted all of the negotiations with the plaintiffs leading to the sale in question and shared the profits of the sale.
The articles of the Civil Code, insofar as may be pertinent here, read as follows:
"Art. 2534. The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.
"This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser. * * *" (All italics ours.)
"Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."
"Art. 2546. In this case, the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice.
"This discovery is not to be presumed; it must be proved by the seller."
In this case suit was instituted more than one year after the sale of the dwelling, and the plea of prescription of one year is well founded under these codal articles unless the seller had knowledge of the vice and neglected to declare it to the purchaser, and is good even in this event unless the action for redhibition was instituted by these plaintiffs within one year after their discovery of the vice. Since one year elapsed, for this action to be maintained proof of the knowledge of the vice on the part of the seller is essential. In both Article 2534 and Article 2545 significance is given to the fact of knowledge of the seller. Under Article 2534 the limitation is not applicable "where the seller had knowledge of the vice and neglected to declare it to the purchaser", and under Article 2545 the seller is answerable in damages when he "knows the vice of the thing he sells and omits to declare it". The rules for proving this knowledge would be the same under both articles.
*668 Under the French law as well as under the jurisprudence of this state the artisan, craftsman, builder, or manufacturer is presumed to know of the vice or defect in the article he constructs, manufactures, or builds.
In Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse & Co., 129 La. 983, 57 So. 309, 315, this court overruled a plea of prescription of one year under Article 2534, and in permitting plaintiff, the purchaser of an engine, to recover had this to say with reference to knowledge of the defect in the vendor: "The vice in the present case consisted in the inadequacy of the gas producer, and in the defective installation of the machine. Of both of these defects the defendant must be held to have had full knowledge. The manufacturer of a machine is held to the knowledge of even latent defects * * *; and the inadequacy of the gas producer must be held to have been patent to the defendant, though not to the plaintiff, since plaintiff was not supposed to have, and, in fact, had, no special knowledge of machinery. And the defendant must also be held to have known that the engine had been defectively installed. It was its duty to know it, and it had full opportunity to know it. It must, therefore, be presumed to have known it. * * *"
In the case of Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 907, 40 L.R.A.,N.S., 480, plaintiff instituted an action for damages for a vice in certain goods sold under Article 2545, and this court in discussing the knowledge of the defendant that the goods sold by it were defective said: "The principle which governs in this case is that every one ought to know the qualities, good or bad, of the things which he fabricates in the exercise of the art, craft, or business of which he makes public profession, and that lack of such knowledge is imputed to him as a fault, which makes him liable to the purchasers of his fabrications for the damage resulting from the vices or defects thereof which he did not make known to them and which they were ignorant of."
The court therein quoted as follows from the French commentators:
"From Pothier, Vente, § 214:
"`There is a case where the vendor, although he was entirely ignorant of the vice of the thing sold, is nevertheless bound to repair the damage which this vice may have caused the vendee in his other property; it is the case where the vendor is a workman or a merchant who sells the fabrications of the art or trade of which he makes profession. Such workman or merchant is bound to repair whatever damage the buyer may have suffered from the vice of the thing sold in putting it to the use for which it was intended, even if such workman or merchant should pretend to have been ignorant of said vice.
"`The reason is that a workman, by reason of the profession which he makes of being skilled in his craft * * * (makes the solemn promise, or gives the solemn pledge, of his proficiency in his art). He renders himself responsible towards all those who contract with him, for the things he makes being fit for the use to which they are naturally destined. His unskillfulness or lack of knowledge in all that concerns his art is a fault which is imputed to him, as no one should publicly make profession of an art if he is not possessed of all the knowledge necessary for exercising it well; * * * (incompetency is reckoned a fault). Dig.L. 132, Reg. Juris.'
"From Dalloz, Codes Annotes, art 1645, Nos. 15, 16:
"`But there is an hypothesis under which the purchaser will not be required to make this proof' (the proof that the vice was apparent, or that the vendor had knowledge of it). `It is where, by reason of the profession which he exercises, the vendor should have known even the hidden defects of the things he sells.
"`Thus, even though the vendor was ignorant of the vices of the thing sold, if by his profession he was bound to know them, he is in fault and ought to indemnify the purchaser for the damage suffered; good faith does not exclude incompetency'citing * * * Baudry-Lacantinerie & Saignat, Vente, No. 436.
"This last reference, loc. cit., reads as follows:
*669 "`However, it is generally conceded that the vendor is presumed to know the vices of the thing sold when he is a workman or manufacturer selling the things of his own fabrication; he ought to know their defects, and, if he makes the sale without revealing these defects to the purchaser, he ought to repair the damage which the latter may suffer therefrom; he ought to know what he sells, since it is his own production, and, if he does not know it, there is on his part an incompetency which is a professional, fault whereby he is rendered responsible for the damage.'"
In the case of George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432, 434, this court in discussing the knowledge of the vendor of the vice or defect of the thing sold stated: "We are of the opinion that the doctrine announced in [Kellogg Bridge Co. v. Hamilton] 110 U.S. [108], 3 S.Ct. [537], 28 L.Ed. [86] (the same as that expressed by Laurent) is conservative, and that a manufacturer who disposes of the things which he himself has manufactured can properly and legitimately be held presumptively to a knowledge of the qualities of the things he sells; and we apply that presumption to the case before us."[1]
Under these authorities, we hold in the instant case that the vendors of the brick dwelling were presumed to have had knowledge of the vice of the dwelling or residence sold, since it was built and constructed by the defendant contractor, Mawby. Since, under this conclusion, the vendors had knowledge of the vice in the thing sold and since they failed to declare it to the purchasers, it was not necessary for the plaintiff's to institute the present action within one year from the date of the sale.
The next question raised by the plea of prescription is whether the sellers have proved that the buyers discovered the vice within a year of the suit. The trial court correctly answered this question as follows:
"The next question to be decided is when this discovery was made. Mrs. Brocato, a daughter of the plaintiff who seemed to know more about this situation than anyone else, testified that hairline cracks first appeared in the walls about eight months after the purchase of the house, but that the first time the cracks became large enough to see light through them was in April of 1948 or approximately seven months before this suit was filed. [They first became aware that the crack could be observed from the outside of the house several weeks before the trial.]
"In addition thereto, Mr. Freeman, a qualified construction engineer, testified he examined the cracks or fissures in the fall of 1948 and in his opinion they were from four to six months old.
"We are not in a position to decide when hairline cracks in the wall of a building become large enough to be considered vices and defects under the code articles quoted hereinabove. We can only find that under Civil Code article 2546 supra, the defendants herein have not sustained the burden of proving that the plaintiffs herein discovered these vices and defects more than a year previous to the filing of this suit. * * *"
In our opinion, therefore, the plea of prescription of one year urged by defendants as a defense to this suit is without merit.
Last, the defendants contend that the lower court was in error in rendering *670 judgment in solido against them. We think there is merit in this contention because the partnership composed of the two defendants was an ordinary partnership rather than a commercial partnership. See Articles 2825 and 2826 of the Civil Code; Williams Lumber Co., Inc., v. Stewart Gast & Bro. et al., La.App., 21 So.2d 773. Since this is an ordinary partnership, each partner was liable only for his virile share of the partnership debt. We will accordingly amend the judgment.
For the reasons assigned, the judgment appealed from is amended so as to award the plaintiffs the sum of $3,424 against the defendants jointly rather than in solido, and as thus amended the judgment is affirmed at appellants' costs.
NOTES
[1] There has been some conjecture as to the effect of Kodel Radio Corporation v. Shuler, 171 La. 469, 131 So. 462, on the George and Doyle cases. See Samuel Stamping & Enameling Co. v. Monroe Furniture Co., Ltd., La.App., 171 So. 463; Comment, 23 Tulane L.Rev. 130, 136. The Supreme Court of the United States, the French commentators, and our own jurisprudence were all in accord as to the application of this presumption. This court in its majority opinion in the Kodel case did not discuss the application of the presumption or mention the George or Doyle cases. It is questionable that the Kodel case repudiated or limited the Doyle case or the George case, but, if it did, we consider the Doyle and George cases sound and would refuse to follow the Kodel case here.