88 So.2d 467 (1956)
Woodrow JOHNSON, Plaintiff-Appellee,
v.
James H. HUNTER et al., Defendants-Appellant.
No. 8528.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1956.
*468 Jackson B. Davis, Shreveport, for appellant.
Joseph R. Bethard, Shreveport, for appellee.
AYRES, Judge.
Plaintiff instituted this action against James H. Hunter and L. E. Mayfield, the latter doing business as American Plumbing Company, to recover the sum of $2,030.86, allegedly due in damages account of defective plumbing, or plumbing defectively installed and improperly functioning, in a residence purchased by plaintiff from defendant Hunter located on the premises at No. 830 Captain Shreve Drive, Shreveport, Louisiana, which residence the said Hunter constructed in the course of his business as building contractor and the plumbing in which was done by Mayfield under contract from Hunter.
An exception of no cause or right of action was filed on behalf of Mayfield, predicated on the proposition that there was no privity of contract between plaintiff and that defendant. Thereafter, defendant Hunter filed an answer in which he sought to call L. E. Mayfield in warranty. To this call in warranty Mayfield again filed an exception of no cause or right of action. Both exceptions were sustained. No judgment of dismissal, however, was signed and, consequently, no appeal was, or could be, taken from the action of the court in sustaining these exceptions.
After trial on the merits, judgment was rendered in favor of the plaintiff against the defendant Hunter for $630.86, with legal interest from judicial demand until paid, and for all costs, from which judgment the defendant prosecutes this suspensive and devolutive appeal. The plaintiff has answered the appeal and prayed that the judgment of the lower court be increased to the sum of $1,500.
While the sum as originally claimed exceeds the jurisdictional maximum amount of this court, this claim is obviously exaggerated and may, and should, be disregarded in determining the amount in dispute for jurisdictional purposes. Brantley v. Tugwell, 223 La. 763, 66 So.2d 800; Maxfield v. Gulf States Utilities Co., Inc., 222 La. 987, 64 So.2d 243; Jackson v. Perkins, 221 La. 525, 59 So.2d 708; Mitchell v. Shreveport Laundries, 221 La. 686, 60 So.2d 86; Blanchard v. Brawley, La.App., 75 So.2d 891. For these reasons we have, therefore, assumed jurisdiction of this appeal.
The record discloses that plaintiff purchased the aforesaid residence from Hunter on March 4, 1954; that he and his family moved therein three days later, when he ascertained that neither of the commodes of the bathrooms connected with the front and middle bedrooms was properly functioning in that water would continue flowing after said commodes were flushed. On Monday, March 29, 1954, or two days after plaintiff's occupation of said residence, plaintiff notified Hunter of the defects in said commodes and/or their installation and requested that necessary repairs be made. Notwithstanding *469 this notice and request, the repairs were not made. Subsequently, on April 2, 1954, one of the aforesaid commodes overflowed and flooded both the front and middle bedrooms, damaging the carpets on the floors to such an extent that they were unusable thereafter, although plaintiff attempted to minimize said damage and loss in procuring the services of a carpet cleaner, who removed and attempted to clean the carpets without success.
Defendant contends that when he sold plaintiff the said residence the plumbing facilities were in perfect working order, without defects whatsoever; that the cause of the overflow was due to an obstruction placed in the commode by plaintiff, his wife or some guest, and, except for said obstruction, the continuous running or flowing of water through said commode would not have overflowed and caused the damages sustained by plaintiff. Several days following the aforesaid overflow, an inspection was made of the sewer line extending from the residence to the city man. In excavating to reach said house service line, it was concluded, by seepage from the line and the filling of the ditch, that the line was stopped up. Whereupon, an opening in the line was made, out of which was taken a piece of gauze or other similar material, which defendant and his witnesses identified as a lady's sanitary napkin, which they concluded had been placed in and flushed through said commode by some member or guest of plaintiff's family.
That such may have occurred was not established. Plaintiff's witnesses testified that it did not happen. Moreover, the testimony shows that after plaintiff had contracted to purchase said residence, the defendant continued to show it to other prospective purchasers in the anticipation that plaintiff possibly might not complete his purchase. The doors were left open, painters and other workmen had access to the house, and the prospective purchasers viewed and inspected the same.
The cause of the damage was the defective plumbing which resulted in the overflowing of the commode in the two bedrooms of the residence and over the carpets and padding. The defects or vices in the plumbing made their appearance almost immediately after plaintiff took possession of the house on the third day after he had closed the contract with the defendant for its purchase; indeed, the defects were ascertained on the very day plaintiff moved in. The real cause of the overflow which resulted in the damage complained of was due to the defects in the commodes themselves or to the manner in which they were installed, which defects resulted in the failure of the mechanism to automatically close the intake connection and shut off the water. Even with the sewer line obstructed, if the mechanism of the commodes had been properly functioning, the overflow would not have occurred at all, or, if to any extent, there would have been only a very limited quantity of water, which would have been confined to a very small area.
Although, as observed by the trial judge, this action was treated by the litigants primarily as an action for damages, in reality, it is an action of redhibition under LSA-C.C. Art. 2520 et seq., entitling plaintiff only to a diminution of the purchase price. Art. 2520 provides:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
The purchaser may limit his demand to a reduction of the price, as provided by Art. 2541, reading thus:
"Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."
As heretofore stated, Hunter is a building contractor and in that capacity constructed for his own account and for the purpose of sale the aforesaid residence. As such builder, he is presumed to have *470 notice and knowledge of the aforesaid defects in its construction. In Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse & Co., 129 La. 983, 1000-1001, 57 So. 309, 315, with reference to the knowledge of the vendor as to the defects existing in machinery sold to plaintiff, it was stated:
"The vice in the present case consisted in the inadequacy of the gas producer, and in the defective installation of the machine. Of both of these defects the defendant must be held to have had full knowledge. The manufacturer of a machine is held to the knowledge of even latent defects (35 Cyc. 401); and the inadequacy of the gas producer must be held to have been patent to the defendant, though not to the plaintiff, since plaintiff was not supposed to have, and, in fact, had, no special knowledge of machinery. And the defendant must also be held to have known that the engine had been defectively installed. It was its duty to know it, and it had full opportunity to know it. It must, therefore, be presumed to have known it. Johnson v. Marx & Levy, 109 La. [1036] 1044, 34 So. 68."
In Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 907, 40 L.R.A.,N.S., 480, the plaintiff sought damages for injuries due to poisoning from having eaten cakes and chocolate at defendant's establishment. Defendant contended that, if plaintiff was poisoned, it was not guilty of any negligence and, therefore, not responsible. With reference to defendant's knowledge of the facts, it was stated:
"The principle which governs in this case is that every one ought to know the qualities, good or bad, of the things which he fabricates in the exercise of the art, craft, or business of which he makes public profession, and that lack of such knowledge is imputed to him as a fault, which makes him liable to the purchasers of his fabrications for the damage resulting from the vices or defects thereof which he did not make known to them and which they were ignorant of."
In discussing the knowledge of the vendor of a vice or defect of the thing sold, the Supreme Court, in George v. Shreveport Cotton Oil Co., 114 La. 498, 505, 38 So. 432, agreed with the doctrine announced in Kellogg Bridge Co. v. Hamilton, 110 U.S. 108, 3 S.Ct. 537, 28 L.Ed. 86, that a manufacturer who disposes of the things which he himself has manufactured can properly and legitimately be held presumptively to a knowledge of the qualities of the things he sells. Accordingly, that doctrine was applied in the George case.
In Tuminello v. Mawby, 220 La. 733, 57 So.2d 666, the plaintiff sought a diminution of the purchase price of a brick veneer dwelling purchased by him from the defendants due to defects in construction, primarily of the foundation, resulting in the cracking of the plastered walls, and, eventually, the brick walls, producing fissures, or a parting of the walls, to the extent that a man's hand could be inserted therein and through which rain and wind came and daylight could be seen. The plaster fell and the interior deteriorated and became unsightly in appearance. Under the authority of LSA-C.C. Art. 2545, reading as follows,
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages",
the court, after discussing the Doyle and George cases and referring to the French authorities, who had recognized the principle, held that the vendors of a brick dwelling were presumed to have had knowledge of the vice or defect in its construction since it was built and constructed by them.
We, therefore, conclude that Hunter had notice and knowledge, or, at least, had presumptive notice and knowledge, of the vices and defects of which plaintiff complained. There is no contention that such vices and defects were declared by him to the plaintiff as purchaser of the property.
The law applicable to plaintiff's action is found in the articles of our LSA-Civil *471 Code dealing with the obligations of the seller. Pursuant to Art. 2475 thereof, the seller is obliged to warrant the thing which he sells. The sale may be avoided under Art. 2520 thereof, quoted hereinabove, for some vice or defect in the thing sold which renders it absolutely useless or its use so inconvenient and imperfect that it might be supposed that the buyer would not have purchased it had be known of the vice. This action, however, will not lie for apparent defects, that is, such as the buyer might have discovered by simple inspection. LSA-C.C. Art. 2521. Ordinarily, the buyer who institutes such an action must prove that the vice existed before the sale was made to him. LSA-C.C. Art. 2530. The buyer, however, may limit his demand to an action for reduction of the price, as provided under LSA-C.C. Art. 2541, which is the nature of the action plaintiff instituted here. In the event the seller knew of the vice of the thing he sold and omitted to declare it, besides the restitution of the price and repayment of the expenses, he is answerable to the purchaser in damages. LSA-C.C. Art. 2545.
It is clear from the proof in this case that the damage complained of was caused by the defective commode and/or its installation. A proper installation would have included an inspection to determine that the mechanism would properly function and automatically shut off the flowing of the water through the intake pipe before the bowl overflowed. Whatever inspection was made, as contended by defendant, did not disclose the imperfection which caused the damage. Such inspection was, therefore, inadequate for the purpose or to forestall the event or calamity which followed. The commode was, therefore, not free of vices and defects at the time the house was sold to plaintiff by defendant.
In the case of Cipriano v. Superior Realty & Construction Corporation, 228 La. 1065, 84 So.2d 822, even though it was held that where the defendant did not construct the dwelling sold and alleged to have been damaged, the plaintiff was permitted to recover the amount alleged to have been necessary to make the repairs to the dwelling damaged by fire originating account of the defective installation of a heater. Plaintiff there was permitted to recover under the principle that he was entitled to a diminution of the purchase price by a sum established by the evidence necessary to repair said damage.
Accordingly, the conclusion is inescapable that defendant should respond to plaintiff for a sum adequate to repair the damages sustained. The items claimed are as follows:
(a) To replace the carpets and
padding $ 383.41
(b) Services rendered in cleaning
the carpets 112.45
(c) Embarrassment and humiliation
 1000.00
(d) Attorney's fees 500.00
(e) Replacing commode 35.00
Of these several items the trial court allowed items (a), (b), (e), and $100 of (c), aggregating $630.86.
In support of his claim for attorney's fees, plaintiff relies upon Smallpage v. Wagner & Wagner, La.App., 84 So.2d 863, and the authorities therein cited. Our appreciation of those cases leads us to the conclusion they are readily distinguishable from the case at bar. In the instant case, Hunter, as the builder of the residence purchased by plaintiff, is held to have had presumptive knowledge of the defects and vices existing in the plumbing fixtures which caused the damage for which compensation was sought. In the cited case plaintiff relied upon the provisions of LSA-C.C. Art. 1934, providing for damages when a contract has been breached through fraud or bad faith. These elements are not shown to have existed here.
The author of the opinion in the Smallpage case was also the organ of the court in Rodriguez v. Hudson, La.App., 79 So.2d 578, 580, wherein he stated:
"Insofar as the claim for the fee for prosecuting this suit is concerned, *472 plaintiffs cannot recover as the jurisprudence is well established to the effect that a plaintiff as a rule is not entitled to collect his attorney's fee from defendant merely for being successful except where the obligation to pay the fee is imposed by statute or stipulated for by contract. Winkler v. Ascension Bank & Trust Co., 182 La. 69, 161 So. 23."
In our review and appreciation of the record, we find no manifest error in the judgment appealed. The award appears to be neither inadequate nor excessive. The judgment is, accordingly, affirmed at appellant's cost.
Affirmed.