117 So.2d 772 (1959)
W. C. DALY, Plaintiff-Appellee,
v.
Sol ABRAMSON, Defendant-Appellant,
Frank J. Zuzak (Called in Warranty), Appellant,
Cahn Electric Company, Inc. (Called in Warranty), Appellant.
No. 9055.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1959.
On Rehearing January 26, 1960.
*773 Wilson, Abramson, Maroun & Kaplan, Shreveport, for defendant-appellant.
Freyer & Freyer, Shreveport, for Frank J. Zuzak called in warranty.
Lewis Weinstein, Shreveport, for Cahn Electric Company, Inc. called in warranty.
Mecom, Scott & Despot, William B. Phelps, Jeter & Sawyer, Shreveport, for appellee.
GLADNEY, Judge.
This appeal is from a judgment in favor of plaintiff, W. C. Daly, against Sol Abramson for $735.71, and in favor of Sol Abramson against Frank J. Zuzak, warrantor, for $496. Orders of appeal were granted on behalf of Zuzak, Abramson and the Cahn Electric Company, Inc., but the latter, a third party also called in warranty, failed to perfect its appeal. Plaintiff-appellee has not answered the appeal.
W. C. Daly purchased from Sol Abramson by cash deed dated August 1, 1957, the premises at 311 Ratcliff Street, Shreveport, Louisiana. The vendor expressly represented to his vendee that "the air-conditioning and heating system is to be in good *774 working order", but Daly, upon occupancy, immediately experienced difficulty with the air-conditioning unit and on August 2nd called in the Cahn Electric Company, Inc., which company found it necessary to clean filters, drain and clean the tower, acidize the condenser, and supply new filters and a gallon of Belco. After the system again failed to render proper service, Cahn Electric Company, Inc. replaced the water pump motor, certain pipe fittings and again acidized the condenser. Called back on September 21, 1957, Cahn Electric Company, Inc. removed the old pump and installed a new one, placed a flexible connection on the pump and performed other services. Daly paid $239.71 for these expenses.
With the arrival of colder weather, Daly requested A. H. Otto, a representative of the Climate Engineering Company, Inc., to inspect his central heating system, and after this inspection Otto informed him the heating system could cause asphyxiation as it was not installed in accordance with building code requirements of the City of Shreveport and the National Board of Fire Underwriters. Otto proceeded to correct these deficiencies, rendering an invoice for $496 for work he described as including "necessary grilles, sheetmetal work, new flue, duct insulation, electric wiring, carpenter work, miscellaneous pipe and fittings, and labor as outlined in attached report." The report referred to does not appear in the record. Otto testified, however, the mechanical parts of the unit were in good working order and his concern was caused by the improper method provided for the return air, and defective ventilation of the burned gas.
The heating unit was installed during the erection of the house in 1948. Zuzak, the builder, made a cash warranty sale of the premises to Sol Abramson, who lived there with his family continuously until the property was sold to Daly. While living in the house, Abramson, in 1953, had the Cahn Electric Company, Inc. install the subject air-conditioning unit.
Petitioner's suit is in the nature of a redhibitory action. He alleges the vices and defects complained of in the air-conditioning and heating unit existed prior to his purchase and that he was unaware of such vices or defects which were not discernible by simple inspection. The defendant, impleading Zuzak in warranty, made similar allegations.
Redhibition is defined by LSA-C.C. Art. 2520 as "The avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice", and the article immediately following declares that "apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices". The Code also imposes a limitation as to the commencement of such action in LSA-C.C. Art. 2534, which prescribes the "redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale", but "this limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser."
The foregoing legal principles have special application here. The issues considered are, first, as to the warranties of the air-conditioning unit, and second, as to the warranties of the heating unit. An important factor in a resolution of the questions presented is the expressed warranties by the defendant to Daly to the effect the heating and cooling units were in good working order. Zuzak, of course, is not bound thereby and his warranty to Abramson is necessarily restricted to that supplied in the provisions of LSA-C.C. Art. 2520. Zuzak may not be charged with any responsibility for the air-conditioning unit as it was installed subsequently to his sale of the premises.
The numerous repairs made by the Cahn Electric Company, Inc. show to our *775 satisfaction the air-conditioning system was not in good working order prior to its purchase by Daly, but in argument it is contended by counsel for Abramson that these were ordinary repairs which the vendee is expected to bear. The trial court found no merit in this defense, in view of the special warranty and we concur in its finding.
The vices charged to the heating system must stand or fall with the evaluation accorded the testimony of A. H. Otto, and concerning which we have several comments.
First, we note the witness has not itemized the charges for the services rendered. Admittedly, certain items of the work performed were not required in order to correct the dangers which he assumed to exist.
Second, we are not convinced such a dangerous condition existed as the witness would have us believe. The presence of such dangers was not substantiated by other witnesses who were equally as experienced. Zuzak, the builder, testified he sought the advice of the Dykes Air Conditioning Company before installing the unit, that it was inspected and approved in 1948 by the building inspector of Shreveport, and by the inspectors for the Federal Housing Administration, which approved the house for a loan, Abramson testified he had continuously used the unit for nine years, during which time it gave good service and he had registered no complaint. Vincent F. Giglio, who serviced the unit during the entire period of Abramson's occupancy, testified that he had not observed any indication of danger or he would have brought it to the attention of the owner. Abry S. Cahn, Jr., testified that in 1953 when his organization installed the air-conditioning unit the heating system was inspected for the purpose of determining if the newly installed air-conditioning ducts could be used for the hot air, and no dangerous condition therein was found. Clyde Juneau, the present inspector for the City of Shreveport, and other witnesses uniformly stated the method of installation followed in 1948 by Zuzak was then generally practiced without objection. Thus, the preponderance of the evidence strongly favors a finding that the heating system as so installed and sold in 1948 was without vice or defect. Otto's testimony establishes only that the unit did not comply with certain later prescribed building regulations.
The third objection to the evidence is that it leaves us without a conviction the so-called vices were not apparent to the buyers upon simple inspection. Otto produced photographs which portrayed the conditions of which he complained, thereby demonstrating the conditions were discernible to the eye by simple inspection. Arguendo, even if the alleged conditions were plainly visible but not understood by Abramson as a source of danger, surely these patent defects would not have escaped the professional attention of Giglio for a period of nine years, and of the employees of the Cahn Electric Company, Inc., and others who had inspected the heating system. We must conclude, therefore, that plaintiff has failed to prove the existence of defects or vices in the heating system.
Another defense urged by Zuzak is the one year limitation provided in LSA-C.C. Art. 2534. Our findings of fact exonerate Zuzak of knowingly concealing any vices in the heating system, and, therefore, the special plea of prescription should have been sustained.
A plea of ten years prescription also relied upon by Zuzak is predicated on LSA-C.C. Art. 3544, which provides "All personal actions, except those before enumerated, are prescribed by ten years." (Emphasis supplied.) This plea is inapposite, we think, for the words "those before enumerated" exclude personal actions embraced by LSA-C.C. Art. 2534.
From the foregoing conclusions, it follows:
*776 First, the judgment in favor of plaintiff, Daly, against defendant, Abramson, for Four Hundred Ninety-Six ($496) Dollars, is annulled, set aside and reversed, and this demand of plaintiff is denied; second, the judgment in favor of Abramson against Zuzak for Four Hundred Ninety-Six ($496) Dollars is annulled, set aside and reversed, and defendant's demand in warranty is denied; and, third, the judgment appealed from is affirmed in all other respects, save as to costs, which are to be equally divided between Daly and Abramson.
HARDY, Judge, dissents from that portion of the judgment rejecting plaintiff's claims, in toto, for expenditures in connection with the repair of the heating system.

On Rehearing
AYRES, Judge.
The primary issues and material facts are stated in our original opinion. A rehearing, without restriction or limitation, was granted ostensibly for the purpose of affording a reappraisal and re-evaluation of the testimony as regards the heating system.
To establish the existence of vices and defects in the heating system which render it either absolutely useless or its use so inconvenient or imperfect that he would not have purchased the residence had he known of the vices and defects, plaintiff relies upon the testimony of A. H. Otto, whose testimony, we believe, is corroborated by that of Mitchell G. Willcox, a witness called by Cahn Electric Company, Inc.
These two witnesses, Otto and Willcox, were the only qualified experts, particularly with knowledge of the facts, tendered by either side. Otto is a registered, professional engineer in the State of Louisiana. He obtained a bachelor of science degree in electrical engineering at Texas A. & M. College, where he also studied mechanical engineering. He is also a graduate of the Carrier Air-Conditioning and Refrigeration School. His experience in the heating and air-conditioning field spans a period of 22 years. Willcox is a 1933 graduate of Georgia Institute of Technology with a bachelor of science degree in mechanical engineering.
From our review of the record and as we appreciate and understand the testimony of the aforesaid witnesses, the conclusion is inescapable that the heating system, from the manner of its installation, was defective and that its vice constituted such a defect it could not be supposed that plaintiff would have purchased the residence had he known of such defects.
On plaintiff's call to Otto's firm, a mechanic was sent for servicing the heating system and to light and turn on the gas in the furnace. On a report by the mechanic to Otto that the system was unsafe for operation, Otto made an inspection and confirmed the mechanic's findings. The defective installation of both unit and ductwork permitted the return air and flue-gas to be sucked into and mixed in the same chamber, and thereafter distributed through the duct system to every room of the residence. Thus, it was possible that all the occupants of the residence might be asphyxiated by monoxide gas. Otto testified that the return-air duct should have been tied to and sealed to the casing of the furnace, which was not done, and that, as a consequence, the return air was pulled in through a louver in front of the equipment room, allowing the flue-gas to also be sucked down through the flue into the same chamber and enter the duct system. Otto further testified that the air-distribution system, in the hall of the residence, used the bare wood as a part of the duct system. For these reasons, the witness stated the system was unsafe and its operation constituted a menace to the health and lives of the occupants of the residence.
Upon examination by the court, Willcox testified that he examined the heater, or *777 furnace, at plaintiff's residence about a week before trial and that, as depicted in photographs offered in evidence, copies of which were examined by him, a danger of asphyxiation existed because of the manner of the installation of the heating system.
The defendants offered the testimony of Zuzak, Abramson, Vincent F. Giglio, Richard L. Edelen, Abry S. Cahn, Jr., and Clyde J. Juneau.
Zuzak is a realtor and builder. He was the builder of the residence sold to Abramson, who, in turn, sold the same to plaintiff Daly. According to Zuzak, the heating unit was purchased from Jeff Dykes of the Dykes Air-Conditioning Company, who, he says, furnished him with plans and instructions for its installation, as well as designs for a system of ductwork. Neither Dykes nor any other representative of his company was called to testify. Nor were any of the inspectors for the City or Federal Housing Administration, who were said to have made inspections of this equipment and its installation, called as witnesses. Nor was any showing made or testimony given as to the nature and extent of the inspections purportedly made. Abramson testified that he had used the unit and it had performed satisfactorily for nine years.
The principle involved has no bearing upon the mechanical operation of the system. The issue relates to a purported dangerous condition existing by reason of the manner of its installation. The fact that no one had been adversely affected, or that no one had been asphyxiated, during the period of time covered by the system's operation, does not of itself constitute conclusive proof that such harm, or such asphyxiation, might not result at any time.
Giglio testified he had serviced the heating unit during the occupancy of Abramson and had not observed any indication of danger. Reference to Giglio's testimony clearly establishes the fact that his knowledge of the heating unit was restricted to mechanical service; that he did not deal in or install heating or air-conditioning units. He was only a plumber by trade. His testimony was that he had no knowledge of the ductwork because it was in the attic and in the walls. He had had no occasion to make an inspection.
Cahn's testimony has no material bearing upon the issue presented with reference to the heating system. He merely stated that it is a policy of his company to notify the occupants of a residence of the dangerous character of any part of the heating system which their representatives may have observed on making an inspection of the ductwork in connection with the installation of an air-conditioning system. Edelen, who installed the air-conditioning system for Cahn Electric Company, Inc., testified he made no observation as to the heating system.
Juneau, the present city inspector, testified there must be a positive separation between the return air and the products of combustion. He admitted, however, that some of the contractors, contemporary with the construction of plaintiff's residence, particularly in speculative-built homes, were not complying with the normal and usual building practices even of that time.
From our review of the evidence, we have concluded we erred in our first appraisal and evaluation of this testimony. We now find, from a reasonable preponderance of the evidence, that it is established that the installation of the heating system and its ductwork was so defective as to constitute a menace to the health and lives of the occupants of the residence. Had plaintiff known of these defects, it can be only reasonably concluded he would not have made the purchase of the residence.
Nor are we impressed with the contention that the defects were apparent. They were not such as might have been discovered by simple inspection. Giglio's testimony furnished proof of that fact. His experience and opportunity to observe was vastly greater than that of plaintiff or of the ordinary layman. Therefore, these defects *778 are not excluded from among the number of redhibition vices. LSA-C.C. Art. 2521.
Moreover, the proof amply establishes, by the very nature of the vices themselves, that the defects were incorporated in the construction of the residence and existed before the sale was made to plaintiff, and even before the builder's sale to plaintiff's vendor.
Appropriate here is an expression of the Supreme Court in Cipriano v. Superior Realty & Construction Corporation, 228 La. 1065, 84 So.2d 822, 826, wherein it was stated:
"When a house is sold with a heating system already installed, the heating system forms as much a part of the house as does the foundation or the roof and is covered by the vendor's warranty. If this heating system proves to have hidden vices which existed at the time of the sale and which were such as to render it useless and unsuited for its purpose, the buyer has an action for redhibition or for diminution of the purchase price. Arts. 2520, 2521, La.Civil Code.
"In the instant case we are convinced from the evidence that the defective installation of the heater could not have been ascertained by a simple inspection. Moreover, it could not be supposed that the plaintiff would have purchased the house had he known of the existence of this defective heating system. See Art. 2520, La.Civil Code. Under these circumstances we think plaintiff is entitled to a diminution of the purchase price in the sum of $5,021.33, the amount alleged and proven to have been necessary to make the repairs to the dwelling damaged by the fire." (Emphasis supplied.)
Defendant Abramson should, therefore, respond to plaintiff in reimbursement of the cost of the repairs made necessary by the defects and vices existing in the heating system when sold by him to plaintiff. Objection was made, however, to the sufficiency of the proof offered, particularly as to the itemization of the charges for the services rendered. Specifically pointed out were certain items allegedly unnecessary to make the required correction. This objection is, in our opinion, without merit. The work as finally done was for a stipulated price. That minor and insignificant items of repair were later inserted without increasing the price is a matter of no importance or concern to defendant. The charges made did not include supervision of the work by Otto, his foreman, or of a representative of the sheet metal works. A detailed itemization of customary charges would, according to the testimony, have resulted in a much larger bill.
Next for consideration is Zuzak's liability, vel non, on defendant's call in warranty. Zuzak, as the builder and vendor of the residence, is charged with knowledge of the existence of the aforesaid deman Bros. Lumber Co., Inc. v. Fairbanks, fects and vices in its construction. Temple-Morse & Co., 129 La. 983, 57 So. 309; Doyle v. Fuerst & Kraemer, Limited, 129 La. 838, 56 So. 906, 40 L.R.A.,N.S., 480; Tuminello v. Mawby, 220 La. 733, 57 So.2d 666; Radalec, Incorporated v. Automatic Firing Corporation, 228 La. 116, 81 So.2d 830; Cipriano v. Superior Realty & Construction Corporation, 228 La. 1065, 84 So. 2d 822; Johnson v. Hunter, La.App., 88 So. 2d 467, 469.
In reviewing the applicable jurisprudence, we recently stated, in Johnson v. Hunter, supra,
"As heretofore stated, Hunter is a building contractor and in that capacity constructed for his own account and for the purpose of sale the aforesaid residence. As such builder, he is presumed to have notice and knowledge of the aforesaid defects in its construction. In Templeman Bros. Lumber Co., Inc. v. Fairbanks, Morse & Co., *779 129 La. 983, 1000-1001, 57 So. 309, 315, with reference to the knowledge of the vendor as to the defects existing in machinery sold to plaintiff, it was stated:
"`The vice in the present case consisted in the inadequacy of the gas producer, and in the defective installation of the machine. Of both of these defects the defendant must be held to have had full knowledge. The manufacturer of a machine is held to the knowledge of even latent defects (35 Cyc. 401); and the inadequacy of the gas producer must be held to have been patent to the defendant, though not to the plaintiff, since plaintiff was not supposed to have, and, in fact, had, no special knowledge of machinery. And the defendant must also be held to have known that the engine had been defectively installed. It was its duty to know it, and it had full opportunity to know it. It must, therefore, be presumed to have known it. Johnson v. Marx Levy & Bro., 109 La. 1036, 1044, 34 So. 68.'
"In Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 907, 40 L.R.A., N.S., 480, the plaintiff sought damages for injuries due to poisoning from having eaten cakes and chocolate at defendant's establishment. Defendant contended that, if plaintiff was poisoned, it was not guilty of any negligence and, therefore, not responsible. With reference to defendant's knowledge of the facts, it was stated:
"`The principle which governs in this case is that every one ought to know the qualities, good or bad, of the things which he fabricates in the exercise of the art, craft, or business of which he makes public profession, and that lack of such knowledge is imputed to him as a fault, which makes him liable to the purchasers of his fabrications for the damage resulting from the vices or defects thereof which he did not make known to them and which they were ignorant of.'
"In discussing the knowledge of the vendor of a vice or defect of the thing sold, the Supreme Court, in George v. Shreveport Cotton Oil Co., 114 La. 498, 505, 38 So. 432, agreed with the doctrine announced in Kellogg Bridge Co. v. Hamilton, 110 U.S. 108, 3 S.Ct. 537, 28 L.Ed. 86, that a manufacturer who disposes of the things which he himself has manufactured can properly and legitimately be held presumptively to a knowledge of the qualities of the things he sells. Accordingly, that doctrine was applied in the George case.
"In Tuminello v. Mawby, 220 La. 733, 57 So.2d 666, the plaintiff sought a diminution of the purchase price of a brick veneer dwelling purchased by him from the defendants due to defects in construction, primarily of the foundation, resulting in the cracking of the plastered walls, and, eventually, the brick walls, producing fissures, or a parting of the walls, to the extent that a man's hand could be inserted therein and through which rain and wind came and daylight could be seen. The plaster fell and the interior deteriorated and became unsightly in appearance. Under the authority of LSA-C.C. Art. 2545, reading as follows,
"`The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages', the court, after discussing the Doyle and George cases and referring to the French authorities, who had recognized the principle, held that the vendors of a brick dwelling were presumed to have had knowledge of the vice or defect in its construction since it was built and constructed by them.
"We, therefore, conclude that Hunter had notice and knowledge, or, at least, had presumptive notice and *780 knowledge, of the vices and defects of which plaintiff complained. There is no contention that such vices and defects were declared by him to the plaintiff as purchaser of the property.
"The law applicable to plaintiff's action is found in the articles of our LSA-Civil Code dealing with the obligations of the seller. Pursuant to Art. 2475 thereof, the seller is obliged to warrant the thing which he sells. The sale may be avoided under Art. 2520 thereof, quoted hereinabove, for some vice or defect in the thing sold which renders it absolutely useless or its use so inconvenient and imperfect that it might be supposed that the buyer would not have purchased it had he known of the vice. This action, however, will not lie for apparent defects, that is, such as the buyer might have discovered by simple inspection. LSA-C.C. Art. 2521. Ordinarily, the buyer who institutes such an action must prove that the vice existed before the sale was made to him. LSA-C.C. Art. 2530. The buyer, however, may limit his demand to an action for reduction of the price, as provided under LSA-C.C. Art. 2541, which is the nature of the action plaintiff instituted here. In the event the seller knew of the vice of the thing he sold and omitted to declare it, besides the restitution of the price and repayment of the expenses, he is answerable to the purchaser in damages. LSA-C.C. Art. 2545."
To defendant's call in warranty, Zuzak urges pleas of prescription of one and ten years. Cited in support of the first of these pleas is LSA-C.C. Art. 2534, which provides that the redhibitory action must be instituted within a year commencing from the date of the sale. This article, however, provides that this limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser. There is no showing or contention that Zuzak made any disclosure of these defects to his vendee. This action was instituted, however, within a year following plaintiff's purchase of the property.
More appropriate to the action is LSA-C.C. Art. 2546, which provides that the action in redhibition may be commenced at any time when the vices or defects of the thing sold have been concealed from the purchaser, provided a year has not elapsed since the discovery of the vices.
We do not find applicable LSA-C.C. Art. 3545, relied upon to support the plea of ten-year prescription. The article relates to actions against contractors and architects and not to vendors, and the title of the article and its language so indicate:
"Art. 3545. Actions against contractors and architects
"The action against an undertaker or architect, for defect or (of) construction of buildings of brick or stone, is prescribed by ten years."
The discovery of the aforesaid defects and vices was well within a year next preceding the institution of this action by plaintiff against defendant, and well within a year of defendant's call of Zuzak in warranty.
Zuzak finally urges that, inasmuch as he was not joined by plaintiff as a party defendant, and that inasmuch as neither defendant Abramson nor Zuzak applied for a rehearing, our original decree, as between them, is final. The position taken is untenable. The rehearing, although granted on plaintiff's application, was without limitation or restriction. Our original decree was therefore set aside in its entirety and all the issues were again before us for adjudication as they were on the original hearing. In this connection, it may be pointed out that, inasmuch as both Abramson and Zuzak were relieved in our original decree of liability as to the indebtedness considered on rehearing, there was no necessity for either to apply for a rehearing.
*781 The fixing of expert witness fees and the taxation of such fees as cost are matters not presently before the court. While, by statute, a different rule prevails in cases involving workmen's compensation, the rule in civil cases generally is that expert witness fees should only be fixed after trial of a rule to tax the fees as cost. In Randazzo v. Lucas, La.App., 106 So.2d 490, 496, our brethren of the Court of Appeal for the Orleans Circuit stated:
"Appellants are correct in their contention that the lower court prematurely fixed a fee for the expert witness Eustis, whom plaintiffs produced. There is no authority in law for fixing in the judgment rendered at the termination of the case the fee of an expert witness who appears and testifies at the behest of one of the parties. It is true there can be found some reported cases wherein the court in the main judgment fixed a fee for an expert witness who had been brought into court by a litigant on his behalf, but it will be noted that in those cases no complaint was made regarding the fixing of the fee and the judgment was allowed to stand. If Eustis is entitled to a fee as an expert witness for plaintiffs, such should be fixed only after the trial of a rule to tax the fee as costs."
See also: Turner v. Peoples Industrial Life Ins. Co., La.App., 180 So. 435; Cutitto v. Metropolitan Life Insurance Company, La. App., 172 So. 812; Egan v. Hotel Grunewald Company, Ltd., 129 La. 163, 55 So. 750.
For these reasons, we find no error in the judgment appealed except as to the assessment of costs. Defendant should bear the cost of the call in warranty in which he failed to recover.
Accordingly, our original decree is hereby annulled, avoided, reversed and set aside, and,
It is now Ordered, Adjudged and Decreed that the judgment appealed be amended, as respects the assessment of costs, and that, accordingly, plaintiff W. C. Daly have and recover judgment of the defendant, Sol Abramson, for all costs, including cost of this appeal; and that defendant Sol Abramson likewise have and recover judgment against Frank J. Zuzak for all costs, including the cost of this appeal, except such costs incurred as a result of and incidental to defendant's call of Cahn Electric Company, Inc., in warranty, and to the trial thereof which is assessed against defendant Sol Abramson; and that, as thus amended, the judgment appealed is affirmed.
Amended and affirmed.
GLADNEY, Judge, dissents, adhering to the views expressed in the original opinion.