No. 2026

Second Circuit

———

MATTHEWS v. RUDY

———

(April 10, 1926, Opinion and Decree)

———

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Builders and Buildings—Par. 24.**

Where defects are latent, the acceptance of the work will not ordinarily prevent the owner from demanding that the contractor should remedy same; but where the defects are of minor importance such as leaks in the roof and leaks over the dormer windows, the acceptance of the work discharges the architect and builder from responsibility unless there is an agreement to the contrary.

2. **Louisiana Digest—Builders and Buildings—Par.. 8.**

The law does not hold architects and builders responsible for the defects caused by the foundation giving way when it is due to latent defects in the soil; but where the defects result from an error in the plans or by reason of the foundation having been laid upon soil known to be insufficient to support the structure they cannot avoid responsibility for the damage done to the plumbing by the sinking of the foundation.

3. **Louisiana Digest—Prescription—Par. 78 87.**

The prescription of ten years provided by Article 2762 of the Civil Code applies

to buildings which are constructed on soil which allows them to sink and cause damage. The prescription of one year provided by Article 2546 of the Civil Code does not apply.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo.

Action by Mrs. Lucy G. Matthews against S. Rudy, et al. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Melvin F. Johnson, of Shreveport, attorney for plaintiff, appellant.

Bullock and Warren, of Shreveport, attorneys for defendant, appellee.

WEBB, J. In this action plaintiff seeks to recover judgment against defendant for amounts alleged to be necessary to remedy alleged defects in a building constructed by the defendants, and damages alleged to have resulted to the building from such defects.

Plaintiff alleges she purchased a lot from defendants on which there was a building, and that the building was guaranteed to be in first class condition, but that very soon after she took possession leaks developed in the roof and in the plumbing, and that the piers caved in, and that she had expended eight and 60-100 dollars to have the roof repaired; that the leaks in the roof had damaged the wall paper to the extent of eighty dollars, and the cost of repairing the plumbing and damages occasioned by the leak would amount to sixty-five dollars, and of leveling and repairing the piers would amount to seventy-five dollars.

She alleged that the dormer windows had been covered with shingles and that sheet iron should have been used, the cost of such work being alleged at thirty-five dollars.

She further alleged the cause of the piers sinking was due to a storm sewer on the premises, the presence of which she had not been advised of at the time of the sale.

The defendants answered denying the allegations as to any special warranty, and as to defects, and alleged that the building had been constructed by them under a contract with plaintiff in accordance with plans and specifications.

The defendants also pleaded the prescription of one year under Article 2546 C. C.

The cause seems to have been presented to the court with the view of advising it of all the facts surrounding the transaction between the parties by which the plaintiff acquired the property, and the court in passing upon the case considered the evidence, not only as it related to the allegations of the petition, and the rights of the parties as vendors and vendee, but also with relation to the law governing the rights as owner and contractor. The judgment of the district court rejected plaintiff's demand and she appealed.

OPINION

The evidence establishes that the defendants, who are general building contractors, were the owners of a lot, and an agreement was made between them and plaintiff under which defendants would construct a building upon the lot in accordance with plans and specifications pre-

pared by them, and after the completion of the building the property would be transferred to plaintiff at a price agreed upon for the whole; that when defendants came to construct the building, they ascertained the lot had been filled in, and without advising plaintiff of this fact the foundation was laid as called for by the plans, which appear to have been such as were customarily used for buildings of the character to be constructed where the foundation is laid upon the original soil.

The evidence further shows that very soon after the plaintiff took possession, the roof of the house and dormer windows began to leak, and also that the plumbing leaked, and piers settled, causing damage to the building.

It is shown that when the first leaks in the roof appeared, plaintiff notified defendants, who made repairs, but that defendants refused to make other repairs of leaks, or to repair the plumbing or piers.

The evidence shows the leaks to have been caused by the shingles splitting, which appears to have been due to the quality of the shingles, which, however, were the quality called for by the specifications; and it is also established that the leaks in the plumbing were due to the piers giving way, which, in turn, was due to the foundation being laid upon "filled in" soil.

There was no evidence as to the special warranty, and the witnesses did not attribute the sinking of the piers to the storm sewer but to the conditions above.

In view of the answer of the defendants in which it was alleged the building had been constructed under contract with plaintiff and in accordance with plans and specifications, and of the evidence establishing the fact, we are of the opinion the rights and obligations of the parties are governed by the law relating to the construction of buildings by the job, etc. (Laurent vo. 26, No. 34; Baudry-Lacantinerie, vol. 2, No. 3954); and from this point of view we shall consider the case under the following heads:

1. The leaks in the roof and dormer windows, and the right of the plaintiff to recover for repairs and damages.

2. The leaks in the plumbing and the caving piers, and the right of plaintiff to recover for repairs and damages.

(1) The evidence does not show the roof as a whole to be defective, that is, "that it cannot be repaired other than by replacing the roof", although it indicates that a roof constructed with the quality of shingles used may be expected to develop leaks, and of course to call for repairs, and it may be that this was in the contemplation of the parties, as the defendants repaired the roof when the first leaks appeared, but contend that they were not obliged to make such repairs, and refused to make other repairs.

It must be conceded that a builder will not be permitted to shield himself from responsibility for making a bad roof, on the ground of the material being unsuited for the purpose.

"The defense that bad shingles were furnished by the plaintiff will not avail the party in his excuse for making a bad roof, when he made no objection to their quality before putting them on. (Mouton vs. Droz, 16 La. 111.)

However the evidence does not show the roof as a whole to have been bad, or that the shingles were unfit for the purpose and we are of the opinion that plaintiff, by accepting the building without having a stipulation or agreement as to minor defects or such defects as could be easily repaired and which do not affect the work as a whole, must be held to have waived any claim for repairs or damages caused by the appearance of such defects.

Where defects are latent, the acceptance of the work will not ordinarily be considered as preventing the owner from demanding that the contractor should remedy same (Levy vs. Schwartz, 34 La. Ann. 214); but where the defects are of minor importance we are of the opinion that the acceptance of the work discharges the architect and builder from responsibility, unless there is an agreement to the contrary. (See Police Jury vs. Johnson, 111 La. 282, 35 South. 550; Fuzier-Herman, Art. 1792, C. N. Nos. 51, 52.)

We are of the opinion that the plaintiff cannot recover for the cost of repairs of the leaks in the roof or the damage occasioned by such leaks.

As to the dormer windows,. the evidence does not establish that the shingles used to cover the windows, were not suited for the purpose, and the defects which appeared are, we think, in the same class as those appearing in the roof, and for the same reason plaintiff cannot recover.

(2) As to this, the evidence, as stated, shows that the defect in the plumbing was caused by the piers giving way, which was the result of the foundation being laid upon "filled in" soil, and we are of the opinion that this was a defect which tends to affect the work as a whole, and the question is whether or not the appearance of the defect is under the law attributable to the fault of the defendants, architects and builders.

The law does not hold architects and builders responsible for the defects caused by the foundation giving way when it is due to latent defects in the soil (Bank vs. Fuselier, 9 Rob. 26; Powell vs. Markham, 18 La. Ann. 581); but where the defect results from an error in the plans or by reason of the foundation having been laid upon soil known to be insufficient to support the structure, or which should have been known to be insufficient by the experts, architects and builders who made the plans and constructed the building, they cannot avoid responsibility on the ground that the foundation gave way. (Art. 2762, C. C.; Ingle vs. Jones, 2 Wall. 1; 17 Law Ed. 762; Florida R. R. Co. vs. Smith, 21 Wall. 255; 22 Law Ed. 513.)

The evidence, we think, shows that defendants should have known that the foundation called for by the plans was insufficient, having regard to the soil upon which the building was to be constructed, and that the defects are attributable to their fault, under the provisions of Article 2762 of the Civil Code, to which the prescription of ten years is applicable, and not the prescription of one year.

There is a difference in the opinions of the witnesses as to the cost of remedying the defects and repairing the damage caused by the same; however, the only witness who appears to have examined the premises with reference to making the reparations fixes the amount for the plumbing at sixty-five dollars, and for levelling piers at seventy-five dollars, and we

are of the opinion that his testimony is not overcome by the statements of the defendants that the amounts were excessive where it appears they had not made an examination of the premises for the purpose of ascertaining the amount which would be required to make the reparations.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled and reversed, and that plaintiff have and recover judgment against defendants in the sum of one hundred and forty dollars, with legal interest thereon from January 1, 1922, and all costs of suit.