140 So.2d 257 (1961)
Theodore A. HERMELING, Plaintiff,
v.
Woodrow J. WHITMORE, Defendant, Plaintiff in Third Party Petition, Appellee,
William H. SUGGS, Jr., Defendant in Third Party Petition, Appellant, Plaintiff in Third Party Petition, Appellee,
Don H. SCHMIEDER, Defendant in Third Party Petition, Appellant, Plaintiff in Third Party Petition, Appellant,
Jules F. LANDRY et al., Defendants in Third Party Petition, Appellees.
No. 5253.
Court of Appeal of Louisiana, First Circuit.
December 13, 1961.
Application for Rehearing Denied March 14, 1962.
Rehearing Denied May 4, 1962.
Certiorari Denied June 15, 1962.
*258 Sanders, Miller, Downing, Rubin & Kean, Major & Ponder, Laycock & Stewart, Baton Rouge, for appellants.
Weber & Weber, C. C. Bird, Jr., Baton Rouge, for appellees.
Before ELLIS, HERGET and MILLER, JJ.
MILLER, Judge pro tem.
This suit was brought on January 21, 1958, by plaintiff Theodore A. Hermeling seeking to rescind the sale of a house and lot that he purchased from defendant Woodrow J. Whitmore on February 20, 1957. Plaintiff alleges that there were redhibitory vices in the house and that he first became apprised of the vices in May, 1957. The petition of plaintiff averred that the "West wall * * * had moved away from the floor"; that the "entire West wall appeared to be moving out from the house"; and that the "West wall had continued to move out and away from the floor of the two West bedrooms with the result that the maximum separation is now approximately 2 inches * * * at the floor to approximately ¼ of an inch * * * (¾ of the way to the ceiling)".
The District Court rescinded the sale and gave the plaintiff Hermeling a judgment against the defendant Whitmore for $25,000.00, the amount of the purchase price in the sale from Whitmore to Hermeling. The judgment was signed December 18, 1958, and neither the plaintiff nor the defendant appealed. Therefore, as between Hermeling and Whitmore, the district court judgment as between these two parties is final.
The defendant, Whitmore, by third party petition, sued his vendor, William H. Suggs, Jr., and asked for judgment over against Suggs if Whitmore was cast. This petition was filed March 21, 1958. Defendant Whitmore purchased the house and lot from Suggs on September 1, 1954. The district court, in its December 18, 1958, judgment also rescinded this sale and gave Whitmore a judgment over against Suggs for $21,250.00, the amount of the purchase price in the sale from Suggs to Whitmore. Suggs appealed suspensively, and defendant Whitmore has answered this appeal seeking an increase in the award in his favor against Suggs from the sum of $21,250.00 to the sum of $25,000.00.
The defendant Whitmore, in his third party petition against Suggs, also joined Don H. Schmieder as the vendor of Suggs, under his subrogation from Suggs, and sought to obtain an in solido judgment against both Suggs and Schmieder. But on an exception of no cause or right of action filed by Schmieder, the district court, following the ruling in McEachern v. Plauche Lumber & Construction Company, 220 La. 696, 57 So.2d 405, dismissed this third party petition against Schmieder. This judgment was signed July 21, 1958, and Whitmore did not appeal from that final judgment which sustained Schmieder's exception.
Suggs by third party petition made his vendor, Don H. Schmieder a third party defendant. This petition was filed May 12, 1958. Suggs purchased the house and lot from Schmieder on November 18, 1953, for the sum of $22,500.00. The district court rendered judgment on this third party petition in favor of Suggs and against Schmieder rescinding the sale and ordering Schmieder to pay Suggs $22,500.00, the price set forth in the sale. Schmieder has appealed suspensively from this judgment
Schmieder, by third party petition, made his vendor of the lot, East Broadmoor Company, Inc. (herein represented by Jules F. Landry, et al.) third party defendant on the theory that this defendant manufactured the lot from a forest, and is presumed to know of the vice in the lot; that there was a defect in the lot when Schmieder purchased it *259 which made it unfit to be used as a building site for a home. This petition was filed May 29, 1958. Schmieder purchased the lot on July 1, 1953, for the price of $3,300.00 and during a 60-day period sometime between that date and November 15, 1953, Schmieder built the house on the lot at a cost of $18,336.42. The district court found for Jules F. Landry, et al., and Schmieder has appealed.
There is no serious dispute as to the following dates and events:
July 1, 1953Sale of lot by East Broadmoor Company, Inc., (herein represented by Jules F. Landry, et al.) to Don H. Schmieder.
November 18, 1953By this date Schmieder, as builder had constructed a house on this lot according to plans and specifications prepared at his request by a draftsman, which specifications met the minimum FHA requirements of that time. On November 18, 1953 the residence and lot were conveyed to William H. Suggs, Jr.
September 1, 1954Suggs conveyed this property to Woodrow J. Whitmore and at that time Suggs had no knowledge of there having been any redhibitory vices.
January, 1956Whitmore discovered severe cracking in the west brick wall of this brick veneer home and called this to the attention of Suggs who in turn notified Schmieder.
February or
March, 1956Schmieder undertook at his own expense to repair these cracks by digging under the chain wall and jacking up the northwest corner of the concrete chain wall. After this was done additional concrete under pinning was poured under the west chain wall. The brick wall was repointed and the interior cracks were repaired and repainted.
June, 1956Additional cracks appeared both outside and inside the home. Schmieder again attempted to repair these by pouring additional concrete under pinning under the west foundation. Again the interior cracks were repaired and repainted. All of these major repairs were made at Schmieder's expense and under his direction.
December, 1956Theodore A. Hermeling agrees to purchase the property.
February 20, 1957The deed is passed whereby Hermeling purchased the property from Whitmore.
May, 1957Hermeling discovers defects along the west wall.
January 20, 1958Suit filed naming Whitmore as defendant.
There are many complicated issues presented in this case, all of which have been argued at great length and with eminent ability. Several of these issues are not discussed in this opinion for the reason that, in our view, the case is to be decided on the issue of prescription.
Since the judgment in favor of Hermeling rescinding the sale from Whitmore to Hermeling has become final we are here primarily concerned with Hermeling's rights which he acquired by subrogation to Whitmore's claims against Suggs and Schmieder. This subrogation comes about by virtue of the contract in each of the deeds by which this property was conveyed which contained the following provision:
"Said vendor has bargained and sold, and does by these presents grant, bargain, sell, assign, transfer, deliver and abondon and set over * * * with substitution and subrogation to all rights and actions of warranty against all preceding owners and vendors." *260 By virtue of this subrogation, Hermeling is subrogated to all rights which Whitmore has against Suggs and Schmieder. However Whitmore's claim against Suggs by reason of redhibitory vices, prescribed on September 1, 1955, and his claim against Schmieder by reason of redhibitory vices, prescribed in January, 1957.
Since Suggs had no knowledge of any redhibitory vice at the time he sold the property to Whitmore, Whitmore's claim in redhibition prescribed on September 1, 1955 (one year after the sale), by virtue of the provision of LSA-C.C. Article 2534. This Article provides in part that:
"The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale. This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser."
Although prescription had run against Suggs because he had no knowledge of the vice at the time he sold the property to Whitmore, the deed from Suggs to Whitmore subrogated Whitmore to all of Suggs' claims against his vendor, Schmieder. It is now well established that the owner-contractor is presumed to have knowledge of latent defects, and, therefore, prescription does not commence to run as against the builder as to such defects until the date of their discovery. LSA-C.C. Art. 2545 and 2546, McEachern v. Plauche Lumber & Construction Company, supra, Tuminello v. Mawby, 220 La. 733, 57 So.2d 666, Johnson v. Hunter, La.App., 88 So.2d 467, Daly v. Abramson, La.App., 117 So.2d 772, DePietro v. LeBlanc, La.App., 68 So.2d 156. Since the defects were discovered in January, 1956, prescription as to the claim in redhibition began to run in favor of Schmieder as of that date, and the claim prescribed in January of 1957. The Civil Code articles which so provided are LSA-C.C. Articles 2545 and 2546 which set forth in part:
"The seller, who knows the vice of the thing he sells and omits to declare it, * * * [i]n this case, the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice."
To overcome the authorities hereinabove discussed and in an effort to distinguish this case from those hereinabove cited, Hermeling's counsel has presented an argument which has not yet been approved or disapproved by the Louisiana Appellate Courts. The substance of Hermeling's argument is that although Whitmore's claim in redhibition had prescribed as against both Suggs and Schmieder, these two defendants lose this defense by virtue of the fact that they are called in warranty which warranty is granted in LSA-C.C. 2475 and 2476 and under the expressed wording of their deeds of conveyances. Hermeling argues that the mere fact that the warranty includes a warranty against redhibitory vices does not mean that the prescriptive periods applicable to a redhibitory action between vendor and vendee equally apply to those called in warranty; that the outcome of the lawsuit in this case, and the rights of the parties involved, must be determined as between the original plaintiff and the original defendant; that the respective warrantors are not defendants as to each other, but they stand in the shoes of the original defendant, and their lawsuit is with the original plaintiff to the same extent as that of the original defendant.
Much reliance for these contentions by Hermeling is placed in the case of McEachern v. Plauche Lumber & Construction Company, supra, and particularly the following portion of the opinion (57 So.2d at page 407):
"Warranty, defined in the Code of Practice to be `The obligation which one contracts to defend another in some action which may be instituted against him', Art. 378, may be of two kinds, real or personal. The former is declared to be `that which arises in real *261 or hypothecary actions; as when a purchaser is sued in eviction of an immovable property which has been sold to him.' Art. 379.
"(1, 2) The trial judge properly overruled the exceptions of the defendant Construction Company as to Harrell's call in warranty. The obligation of the warrantor to defend an action involving hidden defects, as well as his obligation to defend against eviction, are obligations imposed on the seller by law through the clear provisions of the Revised Civil CodeArticle 2475 providing that `The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells', and Article 2476 providing `The warranty * * * has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices', to be found under the heading `General Provisions' in (Book III, Title VII) Chapter 6, `Of the Obligations of the Seller.' The stipulation in the deed that the sale was made `under all lawful warranties' was simply a recognition of these legal obligations imposed on the seller by our lawas distinguished from limitations of warranty, authorized by the same Code. For example, parties may by particular agreement dispense with any warranty, add to the obligation thereof, or diminish its effect, Art. 2503; and the law relieves the seller of the redhibitory action when the latent defects have been declared by the vendor to the vendee before or at time of the sale. Art. 2522."
The McEachern case is distinguished from the instant one in that there it appears that the suit was filed within one year from the date that the house was constructed, whereas here, suit was not filed until more than two years after the redhibitory vices were discovered. The issue of prescription was not discussed in the McEachern case.
It is important to note that the last sentence in the hereinabove quoted excerpt from the McEachern case reads that:
"the law relieves the seller of the redhibitory action when the latent defects have been declared by the vendor to the vendee before or at time of the sale. Art. 2522."
In our view had there been the issue of prescription presented in the McEachern case, the Supreme Court might well have seen fit to paraphrase the law relating to prescription in place of the above quotation, and set it out as follows:
"the law relieves the seller who knows of the vice and omits to declare it, when the latent defects have been discovered more than a year prior to the filing of suit. Articles 2534, 2545 and 2546."[1]
We do not find the McEachern case authority for the proposition that the defense of prescription which had accrued to Suggs and Schmieder, was lost when Whitmore conveyed the property to Hermeling without making a disclosure of the redhibitory vices which became manifested while Whitmore owned the property.
Counsel for Hermeling suggests that we are here presented with the same situation considered in the case of Daly v. Abramson, supra, wherein the Court of Appeal, Second Circuit, disallowed the defense of prescription. In that case, the plaintiff purchased certain property from the defendant on August 1, 1957. The defendant had purchased the same property from the builder in the year 1948. The plaintiff contended that there were redhibitory vices in the airconditioning unit and duct work, whereupon the defendant called the builder in warranty. This call in warranty was filed more than ten years after the builder sold the house to the defendant. It was held *262 that the builder was presumed to have knowledge of the defects and that since a year had not elapsed since the discovery of the vices prior to the institution of the suit, the claim had not prescribed. In the instant case the defects were discovered by Whitmore more than two years before the suit was filed by Hermeling.
As stated by the Supreme Court, in George v. Shreveport Cotton Oil Company, 114 La. 498, 38 So. 432, 434:
"The explanation given for adopting the short prescription fixed for (the redhibitory action) is the necessity and propriety of determining with promptness and certainty whether the article sold had or did not have the vices which they were charged to have had."
See also 14 T.L.R. at page 544 and Walton v. Katz & Besthoff, Inc., La.App., 77 So. 2d 563.
As an alternative contention, Mr. Hermeling's counsel contends that Schmieder is responsible under the provisions of LSA-C.C. Art. 2762 which provides:
"If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with brick."
Under the facts of this case Schmieder built the house as a speculation. He purchased the lot, had the plans and specifications prepared by a draftsman, and undertook to construct the house. When it was completed he then put it on the market and promptly sold the house to Suggs. Under these facts we find that the building was not "undertaken to make by the job."
Article 2762 is in the section of the Civil Code having to do with "Constructing buildings according to plots, and other work by the job, and of furnishing materials." The first Article in this section, Article 2756, reads:
"To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price."
This rule has been extended in the case of Matthews v. Rudy, 4 La.App. 226 (1926), where the defendant agreed to build a house on a lot owned by him in accordance with the defendant's own plans and specifications. But in that case there was an agreement made with the prospective purchaser prior to the construction of the house that the entire house and lot would be transferred to the plaintiff for a price agreed upon.
Counsel has cited no case, and we know of none, which has applied LSA-Civil Code Article 2762 to the situation where the builder constructs a house to his own plans and specifications and thereafter puts the building and lot on the market for sale. In such a case the builder is treated as a vendor and Article 2762 does not apply.
For the above and foregoing reasons the pleas of prescription filed by Suggs and Schmieder are sustained.
In view of our decision in the third party actions against Suggs and Schmieder it becomes unnecessary to review the claim of Schmieder versus the vendor of the land, Jules F. Landry, et al.
It is, therefore, ordered, adjudged and decreed that the judgment of the district court be and the same is hereby affirmed insofar as it dismissed the claim of Don H. Schmieder against the third party defendant, Jules F. Landry et al., and reversed and set aside insofar as it rescinded the sales from William H. Suggs, Jr. to Woodrow J. Whitmore and from Don H. Schmieder to William H. Suggs, Jr. All of the costs *263 of these proceedings and this appeal are to be paid by the defendant Woodrow J. Whitmore.
Affirmed in part, reversed in part and rendered.
PER CURIAM.
In the application for rehearing counsel for Theodore A. Hermeling and counsel for Woodrow J. Whitmore have directed our attention to an error in our opinion where we undertook to paraphrase one statement taken from the case of McEachern v. Plauche Lumber & Construction Company, 220 La. 696, 57 So.2d 405 by stating:
"the law relieves the seller who knows of the vice and omits to declare it, when the latent defects have been discovered more than a year prior to the filing of suit. Article 2534, 2545 and 2546."
What we should have said and do now amend our original opinion to so state, is:
"the law relieves the seller who knows of the vice and omits to declare it, when the redhibitory vice has been discovered more than a year prior to the filing of suit. Articles 2534, 2545 and 2546."
In applying this rule to the instant case, we found that the defects discovered by Woodrow J. Whitmore in January of 1956 were severe and were not as contended by Hermeling and Whitmore, minor defects.
We are in complete agreement with applicants that the law and the jurisprudence requires that the seller who pleads prescription, has the burden of proving the discovery of the redhibitory vice.
In the application for rehearing, we are for the first time urged to hold that the work undertaken by Schmeider to repair the house did, in effect, interrupt prescription. The application urges that:
"In the final analysis, the work undertaken by Schmieder at that time (February or March, 1956, and June, 1956) was actually such as to conceal the true deficiencies in the foundation and thus prevent Whitmore from having any knowledge of these conditions until the movement of the wall in May, 1957."
Since the vices were discovered in January, 1956, prescription as to the claim in redhibition began to run in favor of Schmieder as of that date. However, Schmeider recognized these vices and undertook at his own expense to repair them. By so doing, he interrupted prescription. Woodward-Wight & Co. v. Engel Land & Lumber Co., 123 La. 1093, 49 So. 719, Baldwin Sales Co. v. Mitchell, 174 La. 1098, 142 So. 700. In the Woodward-Wight case, the purchaser of a steam operated "skidder" was unable to use the machine because of certain defects. The seller made three attempts to correct the malfunction and in January 1907 abandoned its attempts to repair the machine, without having corrected the malfunction. The purchaser sued in redhibition within a year of the date that the last attempted repairs were made, but more than a year after the vices were discovered, and the Supreme Court held:
"(the seller's) plea of prescription as against the demand for the setting aside of the (sale) is not well founded. The defects which rendered the machines useless should have been known to (the seller) but were not understood by (the purchaser) to be of a character which would authorize a redhibitory action, until the (seller) of the machines abandoned their attempt to cure them, and it was not until then * * * that the prescription relied on began to run."
In the Baldwin Sales case, the Supreme Court considered a case where the seller warranted that its refrigeration equipment would maintain a certain temperature. The seller made numerous adjustments, all of which were unsatisfactory. The plea of one year prescription was overruled, and the court stated:

*264 "The defects which rendered the equipment furnished and installed by plaintiff incapable of producing the results required by the contract should have been known to (the seller). That they were of a character sufficient to authorize (the buyer) to sue for the return of the purchase price and his expenses could not have been definitely known to (the buyer) until (the seller) abandoned its attempt to remedy them. This abandonment on the part of (the seller) apparently did not occur until some time * * * well within the prescriptive period."
In both of these cases, at the time that the last repairs were completed, it was then apparent that the vices still existed and therefore prescription began to run at that time. However, in the instant case, Schmeider and Whitmore were both of the opinion that the repairs of June 1956 completely corrected the redhibitory vices. Since the builder is presumed to know of the vices (McEachern v. Plauche Lumber & Construction Company, 220 La. 696, 57 So.2d 405; Tuminello v. Mawby, 220 La. 733, 57 So.2d 666; Johnson v. Hunter, La.App., 88 So.2d 467; Daly v. Abramson, La.App., 117 So.2d 772; and DePietro v. LeBlanc, La.App., 68 So.2d 156) prescription did not begin to run in favor of Schmeider until the defects again appeared in May of 1957.
Having concluded that Schmeider's plea of prescription was properly overruled, we must consider Schmeider's defense that he is only in this suit by virtue of a third party action brought by Suggs and that Suggs has no right to recover from Schmeider since no judgment has been rendered against Suggs. It is noted once again that Hermeling did not sue Schmeider, and that the third party suit filed by Whitmore against Schmeider was dismissed on an exception of no cause of action, which judgment became final.
Since the only cause of action which Whitmore has pending before this court is one against Suggs, which has prescribed, the result reached in our original decision is correct, and the pending applications for rehearing are denied.
Having altered the basis for our decision, we are reserving rights to all parties to make a second application for rehearing.
NOTES
[1] Opinion amended, infra, p. 263.