353 So.2d 421 (1977)
Dr. and Mrs. Lewis Wayne HILL
v.
JOHN L. CROSBY, INC.
No. 8644.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 1977.
Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, Camille A. Cutrone, New Orleans, for defendant-appellant.
Hammett, Leake, Hammett, Hulse & Nelson, W. Paul Andersson, New Orleans, for plaintiff-appellee.
Before REDMANN, SCHOTT and BEER, JJ.
BEER, Judge.
On October 30, 1969, Dr. and Mrs. Lewis Wayne Hill purchased a home which the seller, John L. Crosby, Inc. (hereafter, "Crosby"), had constructed.
By August, 1974, the Hills had experienced trouble with mildewing and rotting of the frame upper part of the house to the extent that they contracted with Shilstone Testing Laboratory to analyze the problem. Mr. George Pappas of Shilstone concluded that the rotting and mildewing was being caused by water seepage into the boards of the house due to their untreated butt ends. Pappas was of the opinion that this defect resulted from unworkmanlike performance on the part of the builder. On the basis of this, Dr. Hill sued John L. Crosby, Inc. on October 30, 1974. Subsequently, Dr. Hill died in an accident, and Mrs. Hill was substituted as plaintiff.
Following trial, Crosby raised the issue of prescription, contending that the applicable prescriptive period in a case involving breach of warranty on a house constructed as a speculation is one year from the discovery of the vice complained of, as prescribed by La.Civ.Code arts. 2534, 2545 and 2546, as opposed to the five-year period provided by La.Civ.Code art. 2762 and further contending that discovery of the vice occurred more than one year prior to suit.
The trial court (without written reasons) rendered judgment for plaintiff in the amount of $3,000 plus interest and costs, and Crosby appeals.
The inapplicability of the five-year prescriptive period of Article 2762 to a claim in warranty on a house built for speculation *422 was discussed in Hermeling v. Whitmore, 140 So.2d 257, 262 (La.App. 1st Cir. 1961):
"Under the facts of this case Schmeider built the house as a speculation. He purchased the lot, had the plans and specifications prepared by a draftsman, and undertook to construct the house. When it was completed he then put it on the market and promptly sold the house to Suggs. Under these facts we find that the building was not `undertaken to make by the job.'
"Article 2762 is in the section of the Civil Code having to do with `Constructing buildings according to plots, and other work by the job, and of furnishing materials.' The first Article in this section, Article 2756, reads:
`To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price.'
"This rule has been extended in the case of Matthews v. Rudy, 4 La.App. 226 (1926), where the defendant agreed to build a house on a lot owned by him in accordance with the defendant's own plans and specifications. But in that case there was an agreement made with the prospective purchaser prior to the construction of the house that the entire house and lot would be transferred to the plaintiff for a price agreed upon.

"Counsel has cited no case, and we know of none, which has applied LSA-Civil Code Article 2762 to the situation where the builder constructs a house to his own plans and specifications and thereafter puts the building and lot on the market for sale. In such a case the builder is treated as a vendor and Article 2762 does not apply. (Emphasis added.)" Accord, Clark v. Cottage Builders, Inc., 131 So.2d 121 (La.App. 2nd Cir. 1961).
In Hermeling, supra, at 260, the First Circuit noted that the owner-contractor is presumed to have knowledge of latent defects. (Accord, Rey v. Cuccia, 298 So.2d 840 (La.1974).) Thus, the prescriptive period applicable here is that which is to be applied where the seller is deemed to know of the vice, i. e., one year from discovery of the vice, as provided by La.Civ.Code arts. 2534, 2545 and 2546. Rey v. Cuccia, supra; Christy-Ann-Lea., Inc. v. Charter Homes of Louisiana, Inc., 327 So.2d 569 (La.App. 4th Cir. 1976), writ denied, 332 So.2d 277 (La. 1976); American Insurance Company v. Hartford Accident & Indemnity Company, 198 So.2d 757 (La.App. 1st Cir. 1967), writ refused, 251 La. 26, 202 So.2d 649; Hermeling v. Whitmore, supra.
Did the Hills discover the vice complained of prior to October 30, 1973 (one year before the date suit was filed)?
Mrs. Hill contends that the vice complained of is not the mildewing but the "serious and ongoing deterioration of the second floor wooden exterior walls." [1] The record reveals the following:
1. October 30, 1969, the house, new at the time, was purchased by appellee from appellant.
2. By 1971, the mildew had become "pretty bad." In late 1971, the house was steamcleaned and some rotting boards were noted.
3. In August, 1973, the mildew had become "blackish" and the Hills had it repainted by a contractor, Collins, who replaced rotten boards. They were advised by Collins that more boards would later need replacing.
4. Later in 1973, a second steam-cleaning was necessary.
5. In August, 1974, the Shilstone Testing Laboratory was contacted. Their employee designated the contractor's failure to waterproof the board ends as the cause of the condition.
6. On August 21, 1974, Dr. Hill wrote Crosby requesting some assistance in the matter.
7. Suit was filed on October 30, 1974.
Knowledge that something was wrong with the house existed for a long time before the cause was determined:
"MR. CUTRONE (COUNSEL FOR CROSBY):

*423 Q. Mrs. Hill, is it a fair statement that what you're complaining of in this lawsuit is basically first of all extensive mildew on the exterior, entire wood and exterior of your home plus the rotting of the wood on the exterior of the home, is that correct, those basically are the two things, appearance plus the rotted wood?
A. Extensive rotted wood.
Q. Both of those conditions are conditions which were first noticed in 1971?
A. Yes, sir.
Q. And got progressively worse all the way until 1973, at which time the house was repainted, correct?
A. Yes, sir." (Tr. 36, 37.)
However, it is appellee's contention that neither she nor her husband were aware of the cause of the problem until the Shilstone tests and report were available, just a few months prior to suit. Can this be said to be the discovery of the vice upon which La.Civ. Code art. 2546 focuses?
Black's Law Dictionary defines "discovery" as "the ascertainment of that which was previously unknown;" and "vice" as "a fault, defect or imperfection."
Limiting our conclusions to the peculiar facts and circumstances of this particular case,[2] we conclude that the vice here existent was not discovered until the consultation with Shilstone Testing Laboratory and that, accordingly, the action was timely filed.
The judgment is affirmed, at appellant's cost.
AFFIRMED
REDMANN, J., concurs.
SCHOTT, J., dissents.
REDMANN, Judge, concurring.
The sale of a house by a builder who built it on his own land to sell with the land is necessarily a sale because, at least, it transfers land title as well as house from builder to buyer. But the transfer of "building title" is not a factor which defines a contract as sale rather than building contract since the house built under a building contract must also finally become the property of the landowner for whom it was built. Accordingly, transfer of title does not, in respect to the builder's period of responsibility or warranty, adequately distinguish a builder's sale of a house, built on his own land to sell, from the same builder's building of a house, for another on the other's land. Much less should one contractual arrangement result in a different prescriptive period: evidently the remedy of redhibition or quanti minoris (only available in sale) is prescribed by one year (which perhaps explains Hermeling, supra), but that should not be the only remedy available against a builder since the principle of C.C. art. 2762 is unavoidably applicable by extensive interpretation (see Geny, Method of Interpretation, La.Law Inst. trans., § 105).
C.C. 2762 establishes a five-year period for the builder's responsibility for buildings of wood, for which the proper prescriptive *424 period (as distinguished from the period of responsibility or warranty; see Orleans Par. Sch. Bd. v. Pittman Const. Co., 1972, 261 La. 665, 260 So.2d 661) is ten years; C.C. 3544.
SCHOTT, Judge, dissenting.
The one year prescription period established by C.C. Arts. 2534 and 2546 applies and not the five year prescription period provided by Art. 2762. Hermeling v. Whitmore, 140 So.2d 257 (La.App. 1st Cir. 1961). However, I do not agree that the "discovery of the vice" in this case occurred only when Shilstone Testing Laboratory in August, 1974, diagnosed the cause of the defect. That a defect existed was clear to the purchasers in 1971 when the house was mildewing and the purchasers discovered that some of the weather boards had rotted. Surely, by August, 1973, when the mildew had reappeared to the extent that it was "blackish" and rotten boards had to be replaced they were aware of a defect.
To hold that the prescriptive period did not start to run until August, 1974, under these circumstances is inconsistent with the rationale behind Rey v. Cuccia, 298 So.2d 840 (La.1974). There the Court held that a purchaser need not prove the exact or underlying cause of a trailer's malfunction in order to recover in an action for redhibition.
Thus, purchasers in this case were in a position to file their suit at least in August, 1973, if not in 1971, so that their action was commenced too late.
I respectfully dissent.
NOTES
[1] Appellee's brief, p. 3.
[2] For such consideration as a reviewing court may wish to allocate, we note our reluctance in following Hermeling, supra, insofar as it jurisprudentially distinguishes houses that are "built as a speculation" and, thereafter, placed on the market for sale by the builder and houses which are built in accordance with the owner's "own plans and specifications." We are reluctant to accept a thesis whereby a home purchaser who buys a so-called speculative house finds himself with far more limited rights than one who has a house built to his own plans. Articles 2756, et seq., and, particularly, article 2762 should, we think, also apply to homes that are constructed by a builder for subsequent sale to a home buyer, for, in our view, taking into account the changing times, the person or corporation who has completed the construction of a house and placed same on the market is equally, if not more properly defined primarily as a "builder" than as a "vendor."

Tract home construction, as we know it now, was not known to the redactors of our Code. However, in our view, they would have more likely considered such construction in that section of the Code entitled "OF CONSTRUCTING BUILDINGS ACCORDING TO PLOTS, AND OTHER WORKS BY THE JOB, AND OF FURNISHING MATERIALS" than under "OF THE VICES OF THE THING SOLD." (Emphasis ours.)