393 So.2d 847 (1981)
Donald R. DeSOTO, Plaintiff-Appellant, chain of title. LSA-C.C. art. 2503.
v.
Kenneth Donald ELLIS et al, Defendants-Appellees.
No. 14407.
Court of Appeal of Louisiana, Second Circuit.
January 13, 1981.
*848 Leroy H. Scott, Shreveport, for plaintiffappellant.
Mayer, Smith & Roberts by A. J. Gregory, Jr., Shreveport, for defendant-appellee, Oscar Cloyd, Inc.
Love, Rigby, Dehan, Love & McDaniel by J. Philip Goode, Jr., Shreveport, for defendant-appellee, Shreve Land Co., Inc.
Before PRICE, HALL and FRED W. JONES, JJ.
FRED W. JONES, Judge.
Plaintiff-homeowner sued his vendor and the latter's vendor[1] together with the original owner-contractor for a reduction in the purchase price of his dwelling because of damages caused by an unstable foundation. Also joined as a party defendant was the real estate broker who handled the sale of the involved property to plaintiff. The owner-contractor filed a plea of one year liberative prescription, which was sustained. Judgment was subsequently rendered in favor of the real estate broker, dismissing plaintiff's suit. Plaintiff appeals these judgments.
We affirm.
Context Facts
The record reveals the following pertinent chronology of events:
February 2, 1971Shreve Land Company, Inc., sells to Hal J. Thompson the house and lot involved in this litigation; vendor had constructed house in a Shreveport subdivision on a speculative basis.
May 29, 1974Thompson sells the property to John C. Crawford.
October 11, 1976letter from James D. Mohr, civil engineer, to Oscar Cloyd, Realtor, giving results of inspection of subject property and recommending that work be done on foundation, including underpinning, to make structurally sound. Realtor acts on behalf of Crawford to have the work performed.
March 8, 1977Crawford sells the property to Kenneth D. Ellis.
March 10, 1977letter from Mohr to Ellis stating that work on house foundation had been completed and "it is my opinion that the house is safe and will not settle in these places." Copy of this letter placed in realtor's files.
June 15, 1977plaintiff executes purchase agreement covering involved property; real estate broker is Oscar Cloyd, Realtor, represented by its salesman, Wilbur Whisby; latter has had no prior dealings with this property and is unaware of previous problems with foundation; no one else mentions this matter to plaintiff.
July 13, 1977Ellis sells the property to plaintiff; prior to this Whisby examines Cloyd's file on the property and reads engineer's letter pertaining to repair of unstable foundation, but does not transmit this information to plaintiff before or at time of consummation of sale.
October, 1977plaintiff notices ½ inch wide crack in brick work on side of house; interior cracks develop two or three months later; plaintiff carefully inspected house prior to sale and noticed no defects of this nature at that time.
November 21, 1977letter from Mohr to plaintiff giving results of recent inspection of subject property, stating that there had been additional settling of foundation since repair work, and recommending underpinning and jacking up of foundation; Mohr stated that cracks found in November, 1977 were same as those he observed in October, 1976.
July 13, 1978plaintiff files this suit.
*849 Liability of Shreve Land Co., Inc.
In suits over building defects by subvendees against predecessors in the chain of title, including owner-contractors, Louisiana courts have consistently recognized the cause of action as coming under the warranty provisions of La.Civil Code Art. 2503[2], reasoning that a subvendee is entitled to bring any action the vendor could have brought against his vendor. See McEachern v. Plauche Lumber & Construction Co., 220 La. 696, 57 So.2d 405 (1952); Breaux v. Laird, 230 La. 221, 88 So.2d 33 (1956). Consequently, a subvendee is subrogated to the rights of his vendor and his vendor's warranty against redhibitory defects from the vendor who sold the property to him, and so on up the chain of title.
The cause of action asserted by plaintiff in his petition, as to prior vendors in his chain of title, is clearly one to reduce the purchase price of his home because of a redhibitory vice.[3] However, appellant argues that the trial judge erred in holding that the one year prescriptive period for redhibitory actions[4] was applicable to the claim against Shreve Land Co., Inc. rather than the ten year prescriptive period provided for by La.Civil Code Arts. 2762 and 3545.[5]
This precise question was considered in Hermeling v. Whitmore, 140 So.2d 257 (La. App. 1st Cir. 1961). There the plaintiff sued his vendor to rescind the sale of a house and lot because of redhibitory vices in the house. Prior vendors, including the builder of the house, were made parties to the litigation through third party demands. One of plaintiff's contentions was that the builder was liable under C.C. Art. 2762. Finding that the builder had constructed the house as a speculation, the court rejected plaintiff's argument with this explanation:
"Counsel has cited no case, and we know of none, which has applied LSA-Civil Code Article 2762 to the situation where the builder constructs a house to his own plans and specifications and thereafter puts the building and lot on the market for sale. In such a case the builder is treated as a vendor and Article 2762 does not apply."
In this case Shreve Land Co., Inc., built the house in question as a speculative venture, and not specifically for its vendee Thompson. It is considered as a vendor rather than an "undertaker" under Articles 2762 and 3545. Therefore, the trial judge correctly held, consistent with the Hermeling ruling, that the applicable prescriptive period as to the action against this defendant is that of one year for redhibitory actions.
The next question is when the one year prescriptive period began to run against Shreve Land Co., Inc. Our jurisprudence has established the legal principal that an owner-contractor is presumed to *850 have knowledge of latent defects and, for that reason, prescription does not begin to run as against that builder as to such defects until the date of their discovery, as provided for by La.C.C. Art. 2546. See Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952); Johnson v. Hunter, 88 So.2d 467 (La.App. 2d Cir. 1956); Hermeling v. Whitmore, supra; Hill v. Crosby, Inc., 353 So.2d 421 (La.App. 4th Cir. 1977).
Here the latent defect, an unstable foundation manifested by cracks in exterior walls, was discovered in October, 1976. Plaintiff's immediate predecessors in title had one year from that date to institute their redhibitory action. Under his warranty deed plaintiff acquired that right. Since his suit was not filed until July, 1978, the one year prescriptive period had elapsed.[6] Therefore, the trial judge properly sustained this defendant's plea of prescription.
Liability of Oscar Cloyd, Inc.
Appellant contends that the trial judge erred in holding that there was no duty on the part of Cloyd's salesman, Whisby, to disclose prior defects in the house purchased by plaintiff merely because the salesman believed that these defects had been repaired.
The confused state of our law relating to the duty owed by real estate brokers to purchasers was summarized by the Louisiana Supreme Court in Latter & Blum, Inc. v. Richmond, 388 So.2d 368 (La.1980) as follows:
"Courts and commentators in Louisiana have wrestled for years with the problem of attempting to define the duties of brokers, particularly real estate brokers. (citations omitted) The Louisiana Civil Code Articles relied upon by the Court of Appeal define a `broker' as a person `employed to negotiate a matter between two parties, and who for that reason, is considered as a mandatary of both.' La.Civ. Code art. 3016. The obligations of a broker differ from those of an ordinary mandatary in that `his engagement is double, and requires that he should observe the same fidelity towards all parties, and not favor one more than another.' La.Civ.C. art. 3017. However, the courts in Louisiana have supplemented the Code's mandate articles by reference to common law rules relating to brokerage contracts. 19 La.L.Rev. 794-795. Other duties are imposed upon real estate brokers as the result of the passage of special real estate statutes. See R.S. 37:1431 et seq.
"The jurisprudence on the nature and source of the real estate broker's duties seems confusing even in the relatively straightforward situation where the broker is employed to find a buyer for the property. Some cases impose `common mandatary' status on the broker at the time he has found a prospective purchaser (citations omitted); another has held that a broker becomes a dual fiduciary only after a transaction is consummated (citation omitted), while at least one case has held that the Code articles on mandate do not apply to real estate brokers at all and brokers' duties are limited to those imposed by the real estate licensing statute. (citation omitted)
"In Amato v. Latter & Blum, Inc., 227 La. 537, 79 So.2d 873 (La.1956) this Court found that a real estate broker breached his duty to the public at large imposed by the real estate licensing statute when he failed to transmit an offer to his principal, the prospective vendor."
The court then concluded:
"Ultimately the precise duties of a real estate broker must be determined by an examination of the nature of the task the real estate agent undertakes to perform and the agreements he makes with the involved parties."
However, no attempt was made to delineate those duties.
*851 In White v. Lamar Realty, Inc., 303 So.2d 598 (La.App. 2d Cir. 1974) this court rejected a claim for damages against real estate brokers, pointing out that under La.C.C. Art. 3018 brokers are responsible only for fraud or faults. Recovery was also denied because the acts of defendants were deemed neither wrongful nor negligent under La.C.C. Articles 2315 and 2316.
The plaintiff in Davis v. Davis, 353 So.2d 1060 (La.App. 2d Cir. 1977) filed a suit in redhibition against his vendor because of a flooding problem. Also joined as defendants were realtors who had been involved in the sales transaction. We pointed out that:
"Plaintiffs' remedy against the realtors is in damages for fraud under La.C.C. Art. 1847(9), or for negligent misrepresentation under La.C.C. Art. 2315."
Regardless of the various legal sources cited as bases for elucidation of the duties owed by real estate brokers to prospective purchasers, it seems clear that Louisiana has relaxed the traditional rule that the broker owes duties only to the vendor.[7] Whatever the precise scope of those duties there should be no question but that a real estate broker has a duty to reveal to a prospective purchaser the existence of a material defect in the premises under consideration. Obviously, in the normal course of events this would be a critical factor in the purchaser's decision to consummate the transaction or, at least, have considerable bearing on the purchase price.
The question in our case is whether, under these factual circumstances, Whisby should have informed plaintiff of the prior problems with the unstable house foundation. Preliminary to answering this, we emphasize that Whisby did not conceal the existence of a known defect. Therefore, fraud was not involved. The issue, then, is whether Whisby was negligent in his conclusion that there was no necessity to inform plaintiff of a defect that had apparently been remedied, as explained in the letter (from a civil engineer) contained in the broker's files.
Concluding that, based upon the available information, any reasonable person could have well reached the same decision as Whisby, we find that Whisby was not negligent and that the trial judge acted properly in dismissing the suit against Oscar Cloyd, Inc., for lack of liability.
Conclusion
For the reasons set forth, we affirm the judgments of the trial court, at appellant's cost.
NOTES
[1] According to the record, these two defendants never received service of process nor was personal jurisdiction over them obtained in any other way. Therefore, they are not mentioned in the judgments.
[2] The parties may, by particular agreement, add to the obligation of warranty, which results of right from the sale, or diminish its effect; they may even agree that the seller shall not be subject to any warranty.

But whether warranty be excluded or not the buyer shall become subrogated to the seller's rights and actions in warranty against all others.
[3] Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to reduction of the price.
[4] La.C.C. Art. 2534 provides in part: "The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale. This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser."
[5] Art. 2762. If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks.

Art. 3545. The action against an undertaker or architect, for defect or [of] construction of buildings of brick or stone, is prescribed by ten years.
[6] In view of the fact that more than one year elapsed between the time that Crawford attempted to remedy the defect and the filing of plaintiff's suit, we are not confronted with the question of whether that served to interrupt the running of prescription. However, the jurisprudence indicates that this interruption occurs as to the owner-contractor only if he attempts to have the repairs made. See Brown v. Dauzat, 157 So.2d 570 (La.App. 3rd Cir. 1963).
[7] For an excellent exegesis of this subject, see Comment, The Real Estate Broker-Purchaser Relationship: Louisiana and Common Law, 52 Tul.Law Review 157 (1977).