11 MARVIN, Chief Judge.
Patrick and Lori Huckabee appeal a judgment dismissing, on exceptions of prescription, their 1990 redhibition action against the seller and the manufacturer of a mobile home they purchased in 1984. Plaintiffs alleged numerous defects in the home, most of which involved water leaks and water damage to the home.
The trial court sustained the exceptions of prescription on findings that the action was not brought within one year of plaintiffs’ discovery of the defects in 1984-1986, nor within a year of the manufacturer’s last repair attempts in 1986.
Plaintiffs contend their June 1990 suit was timely, having been brought within a year *411 after the defects reappeared in October 1989, and after the manufacturer acknowledged in early 1990 that at least two of the plaintiffs’ complaints may have been attributable to manufacturing defects.
Finding that the manufacturer’s efforts to correct the water leaks were not successful and that Patrick Huckabee attempted to correct the leaks after the manufacturer ceased its efforts in 1986, we affirm the judgment.
FACTS
The mobile home, manufactured by Sunshine Homes, Inc., of Red Bay, Alabama, was sold to the Huckabees by a Bossier City dealer, Brewer Quality Homes, Inc., about July 17, 1984. Within days of the purchase, the Huckabees noticed a water leak under one of the two toilets in the mobile home. They immediately reported the leak and other minor items needing 12attention to Brewer, who in turn notified Sunshine. According to Sunshine’s records, Sunshine repaired the leaking toilet on July 24, 1984.
During 1985, the Huckabees made numerous complaints to Sunshine, through Brewer, that rainwater leaked into the mobile home, damaging the ceiling, walls and floors in each room. Brewer simply relayed the messages to Sunshine and took no part in the repairs.
Sunshine serviced the home four times in 1985, in January, October, November and December, each time reporting that the leaks and the water damage had been repaired. On the October service call, Sunshine resealed the roof of the mobile home; The leaks persisted thereafter, causing the Huckabees to make additional complaints of leaks in November and December 1985. Sunshine last serviced the home on January 28, 1986. When Mrs. Huckabee reported continuing problems with leaks at some unspecified time later in 1986, Sunshine told Mrs. Huckabee it would not service the home again because the one-year warranty had expired. In response to Mrs. Huckabee’s contention that the leaks arose during the warranty period, Sunshine claimed the earlier leaks had been satisfactorily repaired.
By deposition testimony submitted on the prescription exceptions, the Huckabees testified that none of Sunshine’s repair efforts had alleviated the water leaks, which recurred each time it rained. Mrs. Huckabee said the water “came down the walls in streams.” Mr. Huckabee twice tried to repair the leaks himself, applying sealer to the roof in the summer of 1986, two years after the purchase, and again about six months later. Even after this | gwas done, the mobile home still “leaked like it had before,” according to Mr. Huckabee. The Huckabees did not report the persistent leaks to Sunshine during 1987-1988, in light of Sunshine’s disclaimer of responsibility for further repairs in 1986.
In October 1989, the plastic bathtub in the front bathroom of the mobile home cracked, causing water damage in that room and in the adjoining bedroom. Mr. Huckabee testified that he had noticed small cracks near the bathtub drain as early as 1984, and had reported them to Sunshine on one or more of their 1985 service calls. According to Mr. Huckabee, Sunshine’s personnel claimed the marks were simply superficial “scratches” and did not require any action on Sunshine’s part. There is no mention of bathtub cracks in any of Sunshine’s 1985 work orders listing the Huckabees’ complaints and Sunshine’s remedial actions. By 1986, the cracks were large enough to prevent the tub from holding water when the drain was plugged, according to Mr. Huckabee.
Believing that the October 1989 damage from the cracked bathtub was caused by a problem that had existed for some time, the Huckabees again contacted Sunshine to request repairs. Sunshine refused, repeating its earlier statement that the mobile home was “out of warranty.” The Huckabees made a claim against their homeowner’s insurer for the bathroom damage.
On October 31, 1989, the Huckabees notified the local fire marshal of the various problems they had had with the mobile home since they bought it, stating that the trailer was “rotting from all the water leaks that were never repaired [by Sunshine].” The fire marshal forwarded the Huckabees’ Ucomplaint to Sunshine for reply. By letter to the fire marshal in November 1989, Sun *412 shine’s service manager, Mack Ballard, stated:
In response to the complaint we received from your office on customer, Patrick M. Huckabee, we have checked our records and found the home to be five years old and not under our warranty. We do warranty our homes for a period of one year from date of purchase.
This home was serviced and had no followup complaints for a period of 2-3 years which we feel is too long a time to do any more service now-
We have no control [over] the homeowner’s maintenance of his home after our warranty expires.
For the above reasons, we feel it is not our responsibility as a manufacturer to do any further repairs on this home.
While the fire marshal’s investigation was pending, Mr. Huckabee’s mother wrote a letter to Sunshine’s president, a Mr. Bostick, informing him of the problems her son and daughter-in-law had had with the mobile home. As a result of this letter, Ballard inspected the home on February 26, 1990. He noted numerous problems with the way the mobile home had been set up and maintained, such as the fact that the roof had not been resealed at regular intervals, there was no outside air vent for the clothes dryer, and there were no vents in the metal skirt or underpinning of the home. Ballard reported back to Bostick only two problems that Ballard deemed “would be near a legitimate complaint [which] should possibly be repaired” by Sunshine: the cracked bathtub in the front bathroom and the “bowed” floor at the patio door.
Ballard noticed that the base of the toilet in the front bathroom was broken in two, the floor was bowed, and the tile had been taken off the floor. Ballard testified, and Mr. Huckabee denied, that Huckabee told Ballard “not 15to worry about” the floor damage, which had occurred when Huckabee “busted” the toilet in that bathroom.
Ballard again visited the home on March 7, 1990, when it was inspected by James Myers of the fire marshal’s office. Myers noted nine areas of damage inside the home, including the cracked bathtub, “soft” floors in several rooms, and water stains on ceilings and paneling throughout the home. Myers concluded that the damage was “due to manufacturer defects as noted on previous [Sunshine] service reports [and due to] poor consumer maintenance [of] home.” Our brackets.
After receiving a copy of Myers’ report, Ballard wrote this letter to the Huckabees on April 30, 1990:
I am writing in response to the repairs you have requested on your home.
We at Sunshine Homes do not feel that any of the items listed on the state complaint form are a direct manufacturer related problem, but we would be willing to repair two items listed below:
1. Weak floor at patio door
2. Front bathtub cracked around drain area and 4 x 4 pc. flooring at tub (may or may not be tub related problem)
The other items listed on the letter are due to improper set-up of the home and lack of maintenance by you, the owners of the home.
If you wish us to make these repairs on the home, please call or write us ... and we will set up a date for the repairs.
The Huckabees declined Sunshine’s above offer and filed suit against Sunshine and Brewer on June 29, 1990.
The evidence submitted on the exceptions of prescription included the Huckabees’ answers to interrogatories, their depositions, and the depositions |6of Mr. Huckabee’s mother, Ballard and Myers. The trial court sustained the exceptions on findings that the suit was filed more than one year after the Huckabees discovered the defects in 1984-1985, and more than one year after Sunshine’s last repair attempts in 1986.
The Huckabees contend the trial court’s focus on when they discovered the defects is misplaced. They contend prescription should commence only when Sunshine acknowledged to them, about two months before they filed suit, that at least some of their complaints may have been due to manufacturing defects. Alternatively, the Huckabees contend prescription should be calculated from October 1989, when the defects reappeared.
*413 DISCUSSION
The prescriptive periods applicable to Brewer, the seller, and to Sunshine, the manufacturer, differ as to when the period begins.
With respect to Brewer, the seller, which is not alleged or shown to have known of the defects at the time of the sale, and which took no part in the subsequent repairs other than to refer the Huckabees’ complaints to Sunshine, the one-year prescription began to accrue on the date of the sale. C.C. Art. 2534; Alexander v. Burroughs Corp., 350 So.2d 988 (La.App. 2d Cir.1977), modified on other grounds, 359 So.2d 607 (La.1978); Mire v. Marks Const. Co., 469 So.2d 508 (La.App. 3d Cir.1985).
The one-year prescription on the claim against Sunshine, the manufacturer, which is legally presumed to have known of the defects, and which undertook to repair them after the sale, began when Sunshine abandoned its repair efforts, which did not correct the problems, according to |7the Huckabees. C.C. Arts. 2534, 2545, 2546; Alexander, supra; Manning v. Scott-Hixson-Hopkins, Inc., 605 So.2d 233 (La.App. 2d Cir.1992). As to defects that “reappear” after repairs are attempted, the rule that prescription runs from the time of reappearance applies only when the repair efforts were apparently successful, which was not the ease here. See and compare McKneely v. Don Coleman Const. Co., Inc., 441 So.2d 497 (La. App. 2d Cir.1983) and Hermeling v. Whitmore, 140 So.2d 257 (La.App. 1st Cir.1961).
The Huckabees cite Weaver v. Fleet-wood Homes of Mississippi, Inc., 327 So.2d 172 (La.App. 3d Cir.1976) as authority for their contention that prescription against a manufacturer should not commence when the buyer discovers the defects, but only when the manufacturer admits to the buyer that the product is or may be defective. While Weaver has not been squarely overruled, it is clearly an aberration in the law and has not been followed, even by* the third circuit. See, for example, Franklin v. American Motors Corp., 344 So.2d 1130 (La.App. 3d Cir.1977), and White v. Ford Motor Co., 525 So.2d 96 (La.App. 3d Cir.1988).
RENUNCIATION OF PRESCRIPTION
Liberative prescription may be expressly or tacitly renounced after it has accrued. C.C. Arts. 3449, 3450. The Hucka-bees contend that Sunshine, by its April 30, 1990, letter effectively renounced prescription on their redhibition claim by offering to repair the cracked bathtub and the floor near the patio door. This letter was written after the joint inspection by Ballard, for Sunshine, and Myers, for the fire marshal. The Huck-abees construe this |8letter as a tacit admission that at least these problems, and perhaps the others they had experienced with the home, were caused by manufacturing defects.
A fair reading of the letter leads us to a contrary conclusion. Sunshine’s letter offer to repair two of the nine areas of damage noted in Myers’ inspection report is prefaced by the statement, ‘We at Sunshine Homes do not feel that any of the items listed on the state complaint form are a direct manufacturer related problem[.]” Ballard testified that he made the repair offer on Sunshine’s behalf “because it is always cheaper to do something for the customer and repair it than to ... let it go to court because it is a lot more expensive.”
A debtor’s renunciation of prescription that has already accrued must be “clear, direct, and absolute,” amounting to a new promise to pay the debt or to honor the obligation. Lima v. Schmidt, 595 So.2d 624, 631 (La.1992). The party alleging that prescription has been renounced must meet “stringent proof requirements.” Lima, at p. 634.
A lesser showing is required to establish interruption of prescription that has not yet accrued, which occurs when a debtor acknowledges the debt. Lima, at p. 632. Even under the lesser standard, however, a debtor is not deemed to have acknowledged the debt by recognizing, negotiating or offering to settle a disputed claim. Lima, at p. 634; Waller v. Stuckey, 613 So.2d 643 (La.App. 2d Cir.1993), writ denied; Henderson v. Meshell, 579 So.2d 1113 (La.App. 2d Cir.1991).
*414 On this record and the cited authorities, we do not and cannot construe Sunshine’s letter offer to undertake some limited repair as a renunciation ofjgthe prescription that had already accrued on the Huckabees’ red-hibition claims against Sunshine.
DECREE
At the cost of the Huckabees, the judgment is AFFIRMED.